ESTATE OF ROBERT W. BEST, DECEASED, JOHN FLEMING, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 267–76.    Filed January 26, 1981.

---

*William J. Cooney* and *Stephen E. Silver*, for the petitioner.
*Kimley R. Johnson* and *Joseph T. Chalhoub*, for the respondent.

## OPINION

RAUM, *Judge*: The Commissioner determined the following deficiencies and additions to tax in respect of the decedent's 1970, 1971, and 1972 income taxes:

| Year | Deficiency | Additions to tax sec. 6653(b), I.R.C. 1954 |
|------|-----------|-------------------------------------------|
| 1970 | $227,915.80 | $113,957.90 |
| 1971 | 195,577.66 | 97,788.83 |
| 1972 | 150,646.69 | 75,323.35 |

The deficiencies were primarily the result of the Commissioner's determination that the decedent had unreported net wagering income in each of the taxable years involved, and the Commissioner also determined that all or part of the resulting underpayments in tax were due to fraud. By stipulation of the parties, the deficiencies and additions to tax have been reduced to the following amounts: [1]

---

[1]The stipulation of the parties, filed Feb. 6, 1980, contained amounts slightly different from those stated above. By a motion filed May 1, 1980, the Government moved to correct errors in the amounts stated in the stipulation. Although not signed by petitioner's counsel, the motion stated that petitioner's counsel had no objection to the motion. The adjustments made by the motion appear to be in the aggregate favorable to petitioner. The motion was granted on May 5, 1980, and the revised amounts set forth above are in accordance with the amounts stated in the motion.

| Year | Deficiency | Additions to tax sec. 6653(b), I.R.C. 1954 |
|---|---|---|
| 1970 .............. | $70,172.06 | $35,086.03 |
| 1971 .............. | 61,887.14 | 30,943.57 |
| 1972 .............. | 56,829.94 | 28,414.97 |

The case was submitted solely upon the basis of a stipulation of facts.

The decedent's unreported net wagering income, as determined in the notice of deficiency, was computed by a revenue agent with the use of wiretap information which had been legally obtained by the FBI. The principal issue presented for decision by this fully stipulated case is whether the FBI's purportedly unlawful disclosure of the wiretap information to IRS agents bars the introduction of any evidence obtained from the wiretaps and also deprives the notice of deficiency prepared by such agents of its customary presumption of correctness. In resolving these issues, we are faced with the question, inter alia, of whether a prior wagering excise tax refund suit involving petitioner determined the factual and legal questions presented herein and should be given collateral estoppel effect by this Court.

The decedent, Robert W. Best, whose estate is the petitioner herein, died a resident of Augusta, Ga., on April 29, 1974. His executor, John Fleming, is also a resident of Augusta, Ga.

During the years 1970, 1971, and 1972, Best was involved with a lottery operation in Augusta, Ga., which was operated by three equal partners, Best, F. C. Weathersby, Jr., now deceased, and Joseph L. Sheehan. This operation generated net income after payment of expenses in the amounts of $331,355, $328,850, and $269,817, for 1970, 1971, and 1972, respectively.

Best received distributions of "income" from the partnership during 1970, 1971, and 1972 in the amounts of $100,451.67, $99,616.67, and $79,939, respectively, which amounts were not reported on his Federal income tax returns. The parties have stipulated that these amounts of "taxable income"[2] were omit-

---

[2]The above statements are precisely in agreement with the stipulation filed by the parties. It appears that the above amounts in fact represent Best's one-third distributive share of the partnership income for each year, less the $10,000 of "miscellaneous income" Best reported for each of the years involved. See secs. 702, 704, I.R.C. 1954. In light of the parties' stipulation with respect to the amounts of any deficiencies and additions to tax, and the fact that any

ted from Best's returns, fraudulently, and with intent to evade and defeat taxes.

During 1972, Best was the subject of an investigation by the Federal Bureau of Investigation (FBI) concerning wagering activities in the Augusta, Ga., area. Pursuant to proper authorization, the U.S. District Court for the Southern District of Georgia issued orders permitting the wiretap of certain telephone numbers used in the operation of a gambling business. Partly as a result of information obtained from various telephone conversations during September 1972 and October 1972, arrest warrants were issued from the U.S. District Court, Southern District of Georgia, on November 10, 1972. The execution of these warrants on November 10, 1972, resulted in seizure by the FBI of certain physical evidence, including adding machine tapes, calendar pads, notebooks, and other documents used in the numbers operation. The legality of the interception of the telephone communications[3] and of the seizures subsequently made upon execution of the arrest warrants is not disputed.

Best and other persons were subsequently indicted on April 30, 1973, and charged with violations of 18 U.S.C. secs. 1955, 371, and 372 (1976). On September 27, 1973, Best pleaded guilty to two counts of an indictment against him, and others in the numbers operation likewise entered pleas of guilty. The counts of the indictment to which Best pleaded guilty charged him with the offenses of "Conducting, financing, managing, supervising, directing, or owning all or part of an illegal gambling business" and "Conspiracy to violate the gambling laws of the United States" during a period commencing September 7, 1971. Pursuant to his guilty plea, the District Court adjudged Best guilty of both counts. Best was sentenced to 4 years of imprisonment, which sentence was suspended, placed on probation for 5 years, and fined a total of $30,000.

At the time of the pleas and in connection with imposition of sentence, some testimony was received in open court concerning

---

disparity between Best's one-third distributive share of the partnership net income and amounts stated to be distributions of "income" is favorable to petitioner, no further consideration of this point is required.

[3]The matter appears to have been previously resolved in connection with the criminal prosecution involving Best and other participants in the numbers operation. See *United States v. Best*, 363 F. Supp. 11, 15–19 (S.D. Ga. 1973).

both the physical evidence which had been seized and the contents of the intercepted telephone conversations, and those matters were then disclosed. In connection with Best's entry of his plea of guilty, Agent Edward D. Collins, a special agent of the FBI, gave testimony relating to Best's participation in the numbers operation. Agent Collins testified that at some time after October 15, 1970, the FBI began an investigation of a lottery in Augusta and found that five or more persons were involved and that "they were bringing in between an average of five thousand, between five and six thousand dollars a day." Agent Collins further testified that a telephone at Best's home was used in the numbers operation and that Best had purchased and arranged for the service of most of the adding machines seized in the November 10, 1972, raid of the numbers operation. Agent Collins stated that in the conversations intercepted, "we found that defendant Best was more or less operating and supervising the whole operation."

In April of 1973, prior to the return of the indictment against Best, information regarding the amount or volume of the wagering activity involved in the numbers operation was furnished by personnel of the Department of Justice, U.S. Attorney's Office, and the FBI to special agents of the Internal Revenue Service for the purpose of making a determination of Federal excise tax liability. The information furnished to the special agents regarding the amount of wagering activity involved in the numbers operation was based upon the physical evidence seized by the FBI and also upon an analysis of the transcripts of the intercepted telephone conversations. The information furnished to the special agents was passed by them through official Internal Revenue Service channels and provided to an Internal Revenue Service Audit Division group, and, in turn, was furnished by the appropriate group supervisor to Revenue Agent Larry Shumake in Atlanta, Ga. Based on this information, Agent Shumake, under the provisions of section 6020(b), I.R.C. 1954, prepared and filed wagering excise tax returns on behalf of Best for the periods January 1969 through November 1972, inclusive. As a result, on May 2, 1973, wagering excise taxes, and interest thereon, for those periods were assessed against Best by the Internal Revenue Service.

In January 1974, after the conclusion of action on the criminal cases involved, the evidence which had been seized pursuant to

the execution of the search warrants was forwarded, at the direction of the U.S. Attorney, to a special agent of the Criminal Investigation Division of the Internal Revenue Service. That agent, in turn, forwarded the evidence through channels to an excise tax group of the Audit Division, Internal Revenue Service, and in September 1974, the evidence was turned over to Revenue Agent Ralph Muir of the excise tax group in Atlanta, Ga. Based upon the information furnished to him, Agent Muir, under the provisions of section 6020(b), prepared and filed wagering excise tax returns on behalf of Best for the periods January 1967 through December 1968. As a result, on March 24, 1975, additional wagering excise taxes and interest thereon were assessed against the Estate of Best by the Internal Revenue Service.

In February 1974 and June 1974, the U.S. District Court for the Southern District of Georgia entered orders concerning release and disclosure of the transcripts of the intercepted telephone communications. The District Court order dated February 18, 1974, noted that in addition to providing evidence of violations of 18 U.S.C. secs. 1955 and 371 (1976), the lawfully intercepted wire communications "gave indication of * * * offenses other than those specified in the interception orders to wit:" Ga. Code Ann. sec. 26–2301 (1977) (bribery). Accordingly, pursuant to 18 U.S.C. sec. 2517(5) (1976), the court ordered that any person who through the wiretaps had received information "relating to offenses other than those specified" in the orders authorizing the wiretaps, "to wit," bribery under the Georgia Code, "may disclose the contents of said communications and any evidence derived from such communication[s], while giving testimony * * * in any proceeding held under the authority of the United States or any state * * * ; and further the tapes which resulted from the interceptions may also be released for appropriate use in accordance with the provisions of Title 18, U.S.C., § 2517(5)."

On June 5, 1974, the District Court entered an additional order which is also described in the stipulation as an order "concerning release and disclosure of the transcripts of the intercepted telephone communications." The District Court's June 5, 1974, order was issued in response to a request by the United States for the disclosure of the minutes of certain grand jury proceedings and of the documents received by the grand jury. See Fed.

R. Crim. P. 6(e). In response to this request, the court ordered that "the minutes of the Grand Jury proceedings and the documents received by the Grand Jury be disclosed to appropriate federal investigative agencies including, but not limited to the Federal Bureau of [I]nvestigation, the Internal Revenue Service, and the Bureau of Alcohol, Tobacco and Firearms."

At some time following Best's death, his executor initiated an action in the U.S. District Court for the Southern District of Georgia seeking a refund of the wagering excise taxes. The Government counterclaimed for the unpaid balance of the assessed taxes. In support of the assessments, the Government introduced into evidence the intercepted wire communications. Petitioner in that case moved to suppress the wiretap evidence, contending that the disclosure of such evidence to revenue agents was unlawful under the Federal wiretap statute.

In an opinion issued April 23, 1975, the District Court denied the executor's motion to suppress, and the Fifth Circuit subsequently affirmed this decision, as well as the District Court's $967,902.58 judgment for the Government in respect of wagering taxes. *Fleming v. United States,* an unreported case (S.D. Ga. 1975, 36 AFTR 2d 75–5737, 75–2 USTC par. 16,200), affd. per curiam 547 F.2d 872 (5th Cir.), cert. denied 434 U.S. 831 (1977).

The examination of Best's income tax returns began in 1973. Revenue Agent Drake was assigned to conduct a tax audit of Best on February 1, 1973. During the ensuing months, Agent Drake attempted to reconstruct Best's income by use of the net worth method followed by the bank deposits method, both of which proved to be unsuccessful.

Following his lack of success in reconstructing Best's income from conventional sources, in January 1974, Agent Drake went to the FBI offices in Augusta, Ga., for the purpose of reviewing and analyzing wiretap information. Approximately 1 month later, the wiretap information was given to Agent Drake by the FBI without a court order. This information was used by Agent Drake to compute the unreported income received by Best from lottery operations as determined in the notice of deficiency here involved. In determining the amount of unreported income received by Best, Agent Drake did not receive any information in regard to the wagering activities from Agent Muir, who made one of the excise tax assessments against Best. Agent Drake was not present during any of the criminal courtroom proceedings

involving Best and the other participants in the lottery operation, nor was he present at the time the pleas of guilty were entered. The notice of deficiency involved herein was ultimately issued on December 4, 1975.

In its petition filed with this Court, petitioner requested redetermination of the deficiency determined by the Commissioner. One of the alleged facts pleaded in support of the petition was that the Commissioner's "assessments" were "void" because they were based on transcripts of wiretapped conversations disclosed to IRS agents in purported violation of the Federal statute concerning wiretaps. In its answer, the Government admitted that the deficiencies were in part based on evidence lawfully seized by the FBI and on transcripts of telephone conversations lawfully intercepted by the FBI, but denied that this information was disclosed in violation of any statute and further denied that any assessments were made or were void. The Government's answer further alleged facts purporting to support a finding that any underpayment in Best's income taxes was due to fraud; one of the facts so alleged was Best's criminal convictions heretofore described.

On September 7, 1977, petitioner filed two motions. The first motion, entitled "Motion to Determine Admissibility of Evidence," requested a ruling that the disclosure of the wiretap information to Revenue Agent Drake was unauthorized and prohibited by the wiretap provisions of the Omnibus Crime Control and Safe Streets Act of 1968,[4] 18 U.S.C. secs. 2510–2520 (1976), and that "the IRS cannot use such evidence as a factual basis to support the determination in the statutory notice of deficiency." The second motion, entitled "Motion to Determine Presumptive Correctness of Statutory Notice of Deficiency," requested that the Court rule that because the sole basis for the notice of deficiency was purportedly the wiretap information, no presumption of correctness attaches to the notice of deficiency and that in order to sustain the deficiency, the Commissioner has the burden of producing and going forward with evidence obtained independently from the wiretap.

Following the filing of petitioner's motions, the Government filed a motion for leave to amend its answer to plead collateral

---

[4] Pub. L. 90–351, 82 Stat. 197.

estoppel on the basis of *Fleming v. United States, supra.* This motion was granted by the Court on October 5, 1977, without objection by the petitioner's counsel. As amended, the Government's answer alleges that the legality of the FBI's disclosure of information to revenue agents and the admissibility in evidence of the information so disclosed was litigated and determined adversely to petitioner in the wagering excise tax case. *Fleming v. United States, supra.* The Government accordingly claims that petitioner is estopped from denying that evidence of intercepted communications was lawfully disclosed to revenue agents and that such evidence and information derived therefrom is admissible in the Tax Court.

After a hearing on petitioner's motions held before Judge Irwin on October 5, 1977, Judge Irwin denied the motions in an order and accompanying memorandum sur order issued March 28, 1978.

Thereafter, on October 12, 1978, the petitioner filed a "Motion for Evidentiary Hearing." In this motion, petitioner alleged that the notice of deficiency involved herein could not have been based solely on information which was disclosed in connection with the criminal trials of some of the participants in the numbers operation and in connection with the receipt of the guilty pleas of Best and other participants. Petitioner claimed that the judicial opinions in *Fleming v. United States, supra,* had rested on the premise that the wiretap evidence revealed to revenue agents had been fully disclosed in the criminal trials. Contending that this premise was erroneous, and that the deficiency notice herein was based on evidence not disclosed at the criminal trials, petitioner sought an evidentiary hearing to require the Government to establish the sources of the information relied upon in arriving at its deficiency determination. This motion was denied by Judge Irwin on November 14, 1978.

On December 18, 1978, petitioner's counsel asked Judge Irwin to reconsider his denial of petitioner's motion for an evidentiary hearing. The Court denied the motion for reconsideration. However, at that time, petitioner was permitted to make an offer of proof as to what would have been shown at an evidentiary hearing if the motion for an evidentiary hearing had been granted.

As set forth in the stipulation of facts, petitioner's offer of proof was substantially as follows:

On February 1, 1973, Revenue Agent Drake was a member of a Special Strike Force Team in Augusta, Georgia, which was investigating taxpayers who were suspected of not reporting their income. In January 1974, Revenue Agent Drake and his Group Manager, W. A. McSwain, went to the FBI offices in Augusta, Georgia for the purpose of reviewing and analyzing wiretap evidence which had been obtained by the FBI * * * . Within one month following the meeting with FBI agents in January, Revenue Agent Drake received the wiretap information from the FBI, which he used to compute Mr. Best's unreported income for the calendar years 1970, 1971 and 1972. Revenue Agent Drake did not obtain any information pertaining to the wiretap evidence nor the physical evidence which was seized by the FBI on November 10, 1972 from Revenue Agent Ralph Muir who made the excise tax assessments. Revenue Agent Drake worked independently in arriving at what he concluded was the income tax due and owing by Mr. Best. Revenue Agent Drake was not in the Courtroom at the time testimony was given by FBI Agent Collins at the time the pleas were entered in 1973 by Best and the others who were involved in the numbers operation. Revenue Agent Drake did not rely upon the testimony of FBI Agent Collins which was given in the Federal District Court [criminal] proceeding * * * . There were only two orders which have been entered by any District Court Judge pertaining to the wiretap evidence [as described *supra* at pp. 127–128. * * * Revenue Agent Drake did not rely upon these orders as his authorization to use the wiretap information which was the sole basis of the proposed income tax assessments. Revenue Agent Drake did not even know these orders had been entered.

The wagering jeopardy assessment was made by Revenue Agent Ralph Muir prior to the time any testimony was given in the criminal proceeding * * *

Revenue Agent Drake makes the following observations concerning the wiretap information in his own handwriting in his workpapers:

"Information obtained by the FBI with authorized wiretaps shows Best to be active in operations of an Augusta numbers operation."

"In telephone conversations intercepted by FBI, using U.S. District Court orders, Best's involvement in the operations was demonstrated."

"Wiretap information and FBI evidence indicates the daily take at $6,600.00 a day."

Revenue Agent Drake had no contact whatsoever with any IRS Special Agents.

If Revenue Agent Drake had not been provided with wiretap information from the FBI, he would not have been able to arrive at his computations of unreported income * * *

The only evidence pertaining to the wiretap information which became a matter of public record is set forth in * * * [the transcript of the proceedings in the criminal case involving Best and other participants in the numbers operations].

Revenue Agent Drake did not make his computation of unreported income from any wiretap information which became a matter of "public record."

On February 6, 1980, the parties submitted a joint motion for leave to submit the case under Rule 122, Tax Court Rules of

Practice and Procedure, and requested that the case be assigned to a Division of the Court for report; this motion was granted on February 12, 1980. In the stipulation filed with their motion, the parties agreed that if the Court did not consider petitioner's offer of proof, the petitioner would owe the income tax deficiencies and additions to tax in the revised amounts set forth herein *supra* at page 124.

After wading through the procedural quagmire in which the parties, particularly the petitioner, have seen fit to immerse this case, we come at last to the merits of this unduly protracted litigation. By means of the stipulation of facts and related exhibits, the parties have added some further evidence to the record since petitioner's evidentiary objections were presented to Judge Irwin, and some of the matters raised in petitioner's offer of proof appear to have been stipulated. By this stipulation, the parties have clarified the record as to the evidentiary sources of the wagering excise tax assessment considered by the court in *Fleming*, and have also presented additional evidence as to the evidentiary sources relied upon by a revenue agent in connection with the Commissioner's deficiency determination at issue herein. The parties have further expanded the record as to the evidence admitted by the District Court in connection with the criminal proceedings against Best and other participants in the numbers operation. However, in our judgment, the additional materials placed in the record do not require any different conclusions from those reached by Judge Irwin in the prior proceedings herein. We have carefully examined the entire record, and, in the interest of clarity and convenience, we will set forth our views as to petitioner's evidentiary objections.

We find that irrespective of any potential merit to petitioner's arguments as to the proper construction of 18 U.S.C. secs. 2510–2520 (1976), petitioner's arguments were fully considered and rejected by both the District Court and the Court of Appeals for the Fifth Circuit in petitioner's suit for refund of wagering excise taxes. See *Fleming v. United States, supra.* Because we find that the issues presented in *Fleming* are substantially identical to those presented herein, and because we find no significant difference between the controlling facts in *Fleming* and the facts of the present case, we conclude that as a result of the decision in *Fleming*, petitioner is estopped from challenging the Government's use of the wiretap evidence in this case.

Moreover, to the extent that any of the controlling facts presented by this case may perhaps differ from those in *Fleming*, we follow the Fifth Circuit's construction of the wiretap statute outlined in *Fleming*, since our examination of the materials disclosed at the criminal proceedings involving Best persuades us that he retained no substantial privacy interest in the intercepted communications after their substance was disclosed in the criminal proceedings.

*Collateral estoppel.*—As the Supreme Court recently stated in *Montana v. United States*, 440 U.S. 147, 153 (1979):

A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies . . .." *Southern Pacific R. Co. v. United States*, 168 U.S. 1, 48–49 (1897). * * *

The doctrines are applied because "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. at 153–154.

Res judicata serves as a bar to repetitious litigation which involves the same cause of action determined on the merits in the first proceeding. See *Commissioner v. Sunnen*, 333 U.S. 591, 597 (1948); *Stevenson v. International Paper Co.*, 516 F.2d 103, 108–109 (5th Cir. 1975); *Fairmont Aluminum Co. v. Commissioner*, 22 T.C. 1377, 1381 (1954), affd. 222 F.2d 622 (4th Cir.), cert. denied 350 U.S. 838 (1955). Although the tax years involved herein also appear to have been involved in *Fleming*, the latter was a suit for refund of wagering excise taxes, and petitioner's income tax liability was not in issue. Since these causes of action are not the same, res judicata is not applicable. However, the application of collateral estoppel is not so narrowly limited by the cause of action involved in the prior litigation. Instead, "Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits * * * involving a party to the prior litigation," even though the subsequent suits may be based on different causes of action. *Montana v. United*

*States*, 440 U.S. at 153; see *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 (1979); *Commissioner v. Sunnen*, 333 U.S. at 598; *Cromwell v. County of Sac*, 94 U.S. 351, 353 (1876).

In order to determine whether collateral estoppel should be applied in a particular case, the Supreme Court has stated in *Montana v. United States*, 440 U.S. at 155, that we must address three questions:

first, whether the issues presented by this litigation are in substance the same as those resolved [in the prior litigation] * * * ; second, whether controlling facts or legal principles have changed significantly since the [prior] * * * judgment; and finally, whether other special circumstances warrant an exception to the normal rules of preclusion.

See also *Union Carbide Corp. v. Commissioner*, 75 T.C. 220, 253 (1980).

We do not find in this case any "special circumstances" which would preclude the application of collateral estoppel. See *Montana v. United States*, 440 U.S. at 162–164 and n. 11. Furthermore, petitioner has not directed our attention to any cases which would suggest a change in the controlling law since the decision of the Fifth Circuit in *Fleming*. Indeed, in *Griffin v. United States*, 588 F.2d 521, 526 (5th Cir. 1979), the court reaffirmed its holding in *Fleming*. Thus, the only question we must resolve is whether the issues involved are sufficiently similar to those resolved in *Fleming* to call for the application of collateral estoppel. In making this determination, we will apply the standards enunciated by the Fifth Circuit:

The party asserting the estoppel must show that the issue to be concluded is identical to an issue decided in the prior litigation, that it was actually litigated, and the decision on the issue must have been necessary to the prior judgment. * * *

*In re Merrill*, 594 F.2d 1064, 1067 (5th Cir. 1979); see *James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451, 458–459 (5th Cir.), cert. denied 404 U.S. 940 (1971).

*Fleming v. United States, supra,* was an action for the refund of wagering excise taxes assessed against Best. In that proceeding, the Government introduced into evidence the wire communications intercepted in the wiretaps of the numbers operation. Petitioner sought to suppress this evidence, and the District Court denied the motion on two grounds. First, since the wiretaps had been lawfully authorized, the court held that

suppression was not a proper remedy, because 18 U.S.C. sec. 2518(10)[5] provided only for suppression of evidence obtained from unlawful wiretaps, and did not provide a remedy for unauthorized disclosure of wiretap evidence; the court concluded that the only remedy for unauthorized disclosure was a civil action under 18 U.S.C. sec. 2520 (1976), which provides for the recovery of damages and attorney's fees in suits against persons who unlawfully intercept, disclose, or use wire or oral communications. Furthermore, the District judge who had presided over the trials and guilty pleas of Best and other participants in the numbers operation held that the wiretap evidence became a matter of public record when Best and his codefendants were tried or entered guilty pleas, and that any improper disclosure of the wiretap evidence was rendered harmless because the evidence was freely available. *Fleming v. United States*, an unreported case (S.D. Ga. 1975, 36 AFTR 2d at 75–5738, 75–2 USTC at 88,975).

In affirming the District Court, the Fifth Circuit held that "whatever the exact scope of the statutory provisions, the [wiretap] evidence was properly admitted under the circumstances here." *Fleming v. United States*, 547 F.2d at 873. The court identified two policy interests which might be furthered by preventing the use of lawfully obtained wiretap information in civil tax proceedings. First, the court noted that exclusion would discourage the use of criminal investigations as a pretext for obtaining wiretap evidence for civil tax cases. Second, any privacy interests retained by participants in the intercepted conversations would be protected if disclosure were limited to

---

[5] 18 U.S.C. sec. 2518(10)(a) (1976), provides as follows:

Sec. 2518. Procedure for interception of wire or oral communications

(10)(a) Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that—

(i) the communication was unlawfully intercepted;

(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or

(iii) the interception was not made in conformity with the order of authorization or approval.

Such motion shall be made before the trial, hearing, or proceeding unless there was no opportunity to make such motion or the person was not aware of the grounds of the motion. If the motion is granted, the contents of the intercepted wire or oral communication, or evidence derived therefrom, shall be treated as having been obtained in violation of this chapter. * * *

the Government agents involved in the criminal investigation. 547 F.2d at 873–874.

The court found neither policy compelling in the circumstances of the case. Best's plea of guilty to criminal charges had resulted from the investigation, so the criminal investigation was obviously not a charade. 547 F.2d at 873–874 and n. 1. Second, the court found that only weak privacy interests were involved. The court had earlier noted that at the time Best and other defendants had pleaded guilty, "testimony was given in open court concerning the contents of the intercepted telephone conversations." 547 F.2d at 873. In view of this public disclosure of the relevant evidence in the intercepted communications, the Court of Appeals concluded that the privacy interests presented were too weak to justify exclusion of the evidence, unless some provision of the statute clearly mandated its exclusion. However, the court was unable to find any such clear statutory mandate.

The court cited three provisions of the statute as support for its conclusion that the evidence need not be excluded. First, the court stated that 18 U.S.C. sec. 2515,[6] which prohibits certain evidentiary uses of intercepted communications, was directed toward the exclusion of evidence which was unlawfully seized, rather than evidence which was unlawfully disclosed.[7] The court then noted that two other statutory provisions might authorize disclosure of the wiretap evidence to IRS agents. Section 2517(2)[8] permits the investigative officers conducting an autho-

---

[6]18 U.S.C. sec. 2515 (1976), provides:

Sec. 2515. Prohibition of use as evidence of intercepted wire or oral communications

Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

[7]Accord, *United States v. Horton*, 601 F.2d 319, 324 (7th Cir.), cert. denied 444 U.S. 937 (1979); *In re Gordon*, 534 F.2d 197, 199 (9th Cir. 1976); *United States v. Vento*, 533 F.2d 838, 855 (2d Cir. 1976); cf. *United States v. Giordano*, 416 U.S. 505, 524–528 (1974); *United States v. Phillips*, 540 F.2d 319, 325 (8th Cir.), cert. denied 429 U.S. 1000 (1976), further appeal 564 F.2d 32 (8th Cir. 1977), cert. denied 435 U.S. 974 (1978); see also *United States v. Iannelli*, 477 F.2d 999, 1001 (3d Cir. 1973), affd. on other grounds 420 U.S. 770 (1975).

[8]18 U.S.C. sec. 2517(2), (3), (5) (1976), provides:

Sec. 2517. Authorization for disclosure and use of intercepted wire or oral communications

(2) Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire or oral communication or evidence

rized interception to use the information so obtained to the extent appropriate for the performance of their duties; the court suggested that communication of relevant information to the IRS could be a proper responsibility of the FBI officials. 547 F.2d at 874. Also, the court further observed that section 2517(3)[9] permits investigative officers to disclose the contents of intercepted communications when testifying under oath in State or Federal proceedings, if prior judicial authorization is obtained under 18 U.S.C. sec. 2517(5);[10] the court reasoned that if disclosure could be judicially authorized for purposes of a civil tax proceeding, disclosure would also be permissible to permit the preparation of the assessment which would provide the basis for the civil tax proceeding. 547 F.2d at 875 and nn. 2 & 3.

In concluding its opinion, the Court of Appeals stated that since it perceived no purpose for exclusion of the evidence, it would uphold the District Court's decision without attempting to more precisely define the statutory limitations. The court's holding appears to be a limited one, as the court stated that "We hold only that evidence derived from communications lawfully intercepted as part of a bona fide criminal investigation that results in the taxpayer's conviction may properly be admitted in a civil tax proceeding, at least when the evidence is already part of the public record of the prior criminal prosecution." 547 F.2d at 875.

Although we do not interpret the opinion of the Court of

---

derived therefrom may use such contents to the extent such use is appropriate to the proper performance of his official duties.

(3) Any person who has received, by any means authorized by this chapter, any information concerning a wire or oral communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State or political subdivision thereof.

    \*       \*       \*       \*       \*       \*       \*

(5) When an investigative or law enforcement officer, while engaged in intercepting wire or oral communications in the manner authorized herein, intercepts wire or oral communications relating to offenses other than those specified in the order of authorization or approval, the contents thereof, and evidence derived therefrom, may be disclosed or used as provided in subsections (1) and (2) of this section. Such contents and any evidence derived therefrom may be used under subsection (3) of this section when authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents were otherwise intercepted in accordance with the provisions of this chapter. Such application shall be made as soon as practicable.

[9]See note 8 *supra.*

[10]See note 8 *supra.*

Appeals in *Fleming* as broadly determining that wiretap evidence lawfully obtained is always admissible in subsequent civil tax proceedings,[11] on the basis of the facts stipulated by the parties, we find that this case fits precisely within the limited holding of the court in *Fleming* because the privacy interests presented herein are no greater than those presented to the court in *Fleming*. We are able to discern no significant difference between the facts and issues litigated in *Fleming* and the facts and issues involved herein. In both cases, following Best's indictment and subsequent guilty plea,[12] evidence derived from the FBI wiretaps was disclosed to revenue agents. Based on this evidence, the revenue agents prepared computations of Best's tax liability.[13] In the wagering tax case, this was followed by

---

[11]In *Chapman v. United States*, 559 F.2d 402, 408 (5th Cir. 1977), the court in dictum cited *Fleming* for the proposition that "the statutes governing wiretaps expressly allow evidence [legitimately] * * * gathered in a criminal proceeding to be used in a civil tax assessment suit." However, in *Griffin v. United States*, 588 F.2d 521, 526 (5th Cir. 1979), a case involving other participants in the numbers operation, the court emphasized that *Fleming's* statements as to the proper scope of U.S.C. secs. 2515 and 2517(2) were made in the factual context of very weak privacy interests. Even if *Fleming* does in fact stand for the broader proposition cited in *Chapman*, this would certainly not diminish its collateral estoppel effect for purposes of this case.

[12]In *Fleming*, some disclosures of wiretap information in fact preceded Best's indictment and plea of guilty, arguably presenting stronger privacy interests than those involved herein. See *Griffin v. United States*, 588 F.2d at 525 n. 6. As heretofore set forth, the assessments for January 1969 through November 1972 were based on the information given to IRS agents before Best's indictment. The other assessments in *Fleming* tracked the factual pattern of the present case; the assessments for January 1967 through December 1968 were based on information forwarded to revenue agents in September 1974, after Best's indictment and sentencing. Agent Drake, who investigated Best's income tax liability, received the wiretap evidence around February of 1974, several months after Best's indictment and guilty plea.

[13]There are, of course, differences in the computations of tax liability required by the wagering excise tax and the income tax. The wagering excise tax is imposed on "wagers," sec. 4401, I.R.C. 1954, which includes "any wager placed in a lottery conducted for profit." Sec. 4421(1)(C), I.R.C. 1954. The wagering excise tax is thus imposed on gross wagers, while the income tax requires consideration of deductions as well because the tax is imposed on the taxpayer's "taxable income," which is determined after various trade or business deductions are taken into account. See secs. 1, 61–63, I.R.C. 1954. However, to the extent that the revenue agent involved in the computation of Best's income tax liability was required to delve more deeply into the wiretap evidence than were the revenue agents who prepared determinations of Best's wagering excise tax liability, we do not find this to be a significant distinction from the facts presented in *Fleming*. The critical unknown in each case which was obtained from the wiretap evidence was Best's unreported gross wagering income, which was at once the basis for computing the wagering excise tax and the starting point in determining Best's taxable income. If the revenue agent involved in computing Best's income tax liability made more intrusive examinations of the wiretap evidence than did the wagering excise tax agents, petitioner suffered no injury, since the Government was not required to allow the petitioner the benefit of any unclaimed deductions in determining Best's unreported income. See *Conforte v. Commissioner*, 74 T.C. 1160, 1177–1178 (1980).

IRS assessment of the wagering taxes, while herein, the result was the Commissioner's issuance of a notice of deficiency. However, in both cases, the issues requiring judicial determination were whether the FBI's disclosure of the wiretap information to revenue agents was unlawful, and if so, whether this required that the wiretap evidence be excluded in proceedings for the determination of Best's tax liability.[14] After a full and fair consideration of these questions at both the trial and appellate levels in *Fleming*, culminating with the Supreme Court's denial of Fleming's petition for certiorari, these questions were resolved adversely to petitioner, and we find that petitioner is estopped from further litigating this matter.

To be sure, petitioner contends that there are critical differences between the facts in *Fleming* and the instant case. However, we do not find these distinctions convincing. Petitioner contends that the Fifth Circuit concluded that "there was in fact a full disclosure of the particulars of the intercepted" communications, relying on a stipulation of the parties in *Fleming*, which is set out below.[15] Petitioner then goes on to argue that there was not in fact complete disclosure of the particulars of the intercepted communications, citing the transcripts of the criminal proceedings, and that the Fifth Circuit's holding therefore does not govern the disposition of this case because the controlling facts are purportedly different. However, we think petitioner fails to apprehend the thrust of the opinion of the Court of Appeals, and also overstates the differences between the stipulation in *Fleming* and the stipulation of the parties herein.

---

[14]See note 13 *supra*.

[15]As set forth in petitioner's brief, one of the stipulations filed in *Fleming* reads as follows:

"8. On September 27, 1973, Robert W. Best pleaded guilty to two counts of the indictment against him, and others involved in the numbers operation likewise entered pleas of guilty. At the time of the taking of the pleas and in connection with the imposition of sentence, testimony was received in open court concerning both the physical evidence which had been seized and the contents of the intercepted telephone conversations, *and the matters were thus disclosed.* [Emphasis added.]"

Par. 16 of the stipulation filed herein provides as follows:

"On September 27, 1973, Best pleaded guilty to two counts of an indictment against him, and others involved in the numbers operation likewise entered pleas of guilty. At the time of the pleas and in connection with imposition of sentence, some testimony was received in open Court concerning both the physical evidence which had been seized and the contents of the intercepted telephone conversations, and those matters were then disclosed."

The Court of Appeals in *Fleming* focused on the strength of any privacy interest Best retained in the wiretapped conversations after the criminal proceedings and concluded that any remaining privacy interest was minimal, because of the disclosures made in the criminal case. See *Fleming v. United States*, 547 F.2d at 874–875. Finding that Best retained no substantial privacy interest in the intercepted communications, the court concluded that such communications were admissible as evidence for purposes of determining Best's wagering tax liability, since the wiretap statute did not clearly require its exclusion. We do not find any language in the opinion which implies that verbatim disclosures of the contents of the intercepted communications were considered necessary to vitiate any remaining privacy interests Best retained in the communications. A verbatim disclosure of the transcripts would not have been necessary in the criminal trial, since most of the participants in the numbers operation entered guilty pleas, and we conclude that the Fifth Circuit did not consider verbatim disclosure of the communications at the criminal proceedings to have been necessary to its disposition of the case. The stipulation of the parties in *Fleming v. United States, supra* at n. 15, certainly does not state that *every* intercepted communication was disclosed; it states that testimony was received *concerning* the contents of the intercepted communications, *not* that all of the communications were disclosed in their entirety. Moreover, in our judgment, the parties have made substantially the same stipulation in this case.

We do not interpret the Fifth Circuit's opinion to require that there be "complete" public disclosure of the contents of the intercepted communications prior to their use by revenue agents in computing Best's tax liability. Accordingly, petitioner's offer of proof, which attempts to establish that Agent Drake computed Best's income tax liability from evidence that was not made public at the criminal proceedings, is irrelevant, and may therefore be properly excluded, except to the extent that certain allegations therein have been made part of the stipulation of the parties. Furthermore, Agent Drake was merely a subordinate of the Commissioner. The final deficiency determinations were issued by the Commissioner, who must be treated in these circumstances as having available to him all the factual materi-

als known to his other subordinates who processed the closely related wagering tax assessments.

Finally, even if the stipulation of fact or other evidence in the present case differs from what was before the court in the earlier case, that circumstance would not preclude the application of the principle of collateral estoppel. The critical question is whether the issue was in fact before the court in the prior case and whether there was an adjudication of that issue. Once it is established that there has in fact been such an adjudication, it is no longer open to one of the parties to seek a different result in a later case based upon further or different evidence. *Fairmont Aluminum Co. v. Commissioner*, 22 T.C. 1377 (1954), affd. 222 F.2d 622 (4th Cir. 1955), cert. denied 350 U.S. 838, rehearing denied 350 U.S. 905, leave to file second petition for rehearing denied 352 U.S. 913 (1956). And in the present controversy, there has in fact been an adjudication by the Fifth Circuit that there had been sufficient valid public disclosure of the wiretap evidence in the criminal case to justify use of that evidence in the determination of civil tax liability of Mr. Best. That adjudication furnishes a solid basis for the application of collateral estoppel in the case before us.

*Wiretap Statute.*—Even if we did not apply collateral estoppel, we would still follow the Fifth Circuit's construction of the wiretap statute and reach the same result because we find that Best retained no significant privacy interest in the intercepted communications after the criminal proceedings, at least to the extent that these communications related to his income tax liability. As set forth *supra* at pages 125–126, in testifying at the time of Best's guilty plea, FBI Agent Collins informed the court that the lottery operation was "bringing in" an average of $5,000 to $6,000 per day, and that Best was supervising its operations. Furthermore, in his testimony at the trial of another defendant, Agent Collins explained the numbers operation in complete detail. Agent Collins testified that the numbers operation had been active for 30 years; explained the procedure for computing the daily number from the closing volume on the New York and American Stock Exchanges; specified the various salaries or commissions received by the respective participants in the operation, such as the "comptroller" ($150 per week), the telephone relay operators ($100 per week), the writers (25 percent of gross wagers), and the subwriters (10 percent of gross

wagers); stated that the owners of the operation netted 25 percent of the total wagers; and identified Best as one of the "Kingpins" of the operation. Best's central role in the numbers operation and the approximate profits he received therefrom were fully disclosed in open court in the criminal proceedings. These disclosures provided an ample and independent basis for the issuing of a notice of deficiency. We therefore find that Best could not have retained any significant privacy interest in the contents of the intercepted communications, at least to the extent that such communications were used by Agent Drake for the purpose of ascertaining his liability for income taxes. We accordingly follow the decision of the Fifth Circuit in *Fleming* to the extent that it determined that 18 U.S.C. sec. 2515 (1976) does not bar use of lawfully obtained wiretap evidence in such circumstances.

*Decision will be entered for the respondent in accordance with the revised amounts of the respondent's determination of deficiencies and additions to tax.*