AVON LAND COMPANY, LTD., STEVE K. AND DIANE W. SMITH, PARTNERS OTHER THAN THE TAX MATTERS PARTNER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; MARK XV COMPANY, STEVE K. AND DIANE W. SMITH, PARTNERS OTHER THAN THE TAX MATTERS PARTNER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Avon Land Co.
Docket Nos. 16582-90, 16583-90
United States Tax Court
T.C. Memo 1992-634; 1992 Tax Ct. Memo LEXIS 661; 64 T.C.M. (CCH) 1189; October 27, 1992, Filed *661 Steve K. Smith, pro se. For Respondent: Timothy S. Sinnott
GERBER
GERBER
MEMORANDUM OPINION GERBER, Judge: These cases are before us on respondent's motions for order to show cause why judgment should not be entered against petitioners on the basis of a previously decided case. By order dated October 22, 1991, we granted respondent's motions and ordered petitioners to show cause why judgment should not be entered against petitioners on the basis of the Court's decision in Smith v. Commissioner, T.C. Memo. 1991-419. Petitioners in these cases, Steve K. and Diane W. Smith, are the same Smiths as in the prior case. Smith involved losses claimed for the taxable years 1976 through 1981 and 1984, and we granted respondent's motion for partial summary judgment holding that petitioners, as limited partners, were estopped from relitigating in this Court factual and legal issues which had been decided in a prior legal proceeding. That prior legal proceeding, [1] heard before a special master in the Circuit Court of the Twentieth Judicial District in and for Collier County, Florida (the Florida action), involved a contractual dispute. The transactions *662 entered into between the parties, as described in the special master's findings of fact, are as follows: Leisure, Inc. (Leisure), a Florida corporation doing business as Marco Resort and Club (the Club), converted the property of the Club into time-share units (units). Leisure was in need of cash to carry out the project of selling the units. M. Dale Palmer (Palmer) proposed to provide the needed cash. Palmer's proposal was incorporated into memoranda of understanding. Under these contracts: (1) Palmer created and was general partner of Avon Land Co., Ltd. (Avon), and Mark XV Co. (Mark XV), and Time Marketing (Time) was created by an associate of Palmer's; (2) Mark XV and Avon agreed to purchase real estate in the form of units located at the Club; (3) Mark XV and Avon had the right to buy or refuse to buy all the units at the Club; (4) Mark XV and Avon would pay its related company, Time, 70 percent of the retail sales value to market the units (commissions); (5) Time would subcontract with Leisure to market the units to third-party purchasers for commissions of 65 percent of the retail sales value; (6) Leisure was required to guarantee collection of the third-party notes and *663 mortgages and was required to give Mark XV and Avon substituted units or notes and mortgages for any purchases in default. The special master also found that Palmer effectively controlled and directed Time; that the functions of selling, reselling, and guaranteeing collection remained with the seller; prior to the transactions a large number of units had been presold; the risk of ownership of real property remained with the seller; the purchasers had no intention of purchasing the real estate or making payments on the real estate because they knew that the units were largely presold; the transaction was a tax-motivated "feeble fiction"; and the partnerships set up the transactions with the developer for the partnerships' and partners' tax accounting writeoffs. *664 The special master identified the primary issue as whether the transactions were the purchase and sale of real estate or loans. [2] The special master's conclusions of law were as follows: (1) The Mark XV and Avon transactions were not for the purchase and sale of real estate, as to either documentation or execution; the deeds or mortgages from Leisure to Mark XV and Avon were nullities; (2) the third-party defendants in foreclosure should prevail; (3) the relationship of the partnerships to Leisure was creditor/debtor and not purchaser/seller; and (4) the Mark XV and Avon transactions were loans or financing arrangements which were joint ventures. In Smith the issues related to adjustments to the same two limited partnerships, Avon and Mark XV. Petitioners, on their returns for taxable years 1980 through *665 1982, claimed ordinary losses as their distributive shares from the partnerships. Respondent, having determined that the partnerships were not entitled to accrue or deduct commissions and interest expenses, adjusted petitioners' share of income and loss from the partnerships for those years. This Court held that the issues in both actions were in substance the same and that, with respect to the business dealings of petitioners' two limited partnerships, petitioners were estopped to deny the findings of fact and conclusions of law in the Florida action as they related to Leisure, which was one of four developers, and to Time. The issue here involves the same partnerships and whether they qualify for the real estate exception under section 465, I.R.C., for taxable years 1983 through 1986. Respondent determined that the at-risk exceptions under section 465, I.R.C., were not met. In support of this determination respondent listed seven items petitioners had failed to establish. The seven items enumerated by respondent in the notice of final partnership administrative adjustment (FPAA) for the years presently before us were all included among the 20 items contained in the statutory *666 notice of deficiency for the years at issue in Smith. Respondent alleged that petitioners had failed to establish the following: (1) That the partnership was in the trade or business of buying or selling interests in real estate; (2) That the partnership was a dealer in the real estate; (3) That the partnership was not subject to the at risk provisions and restrictions of the Internal Revenue Code; (4) That the partnership acquired or transferred the benefits and burdens of ownership in real estate during the years in issue; (5) That the partnership did not acquire the benefits or burdens in property or assets other than real property; (6) The activities of the partnership did not constitute a financing device or the acquisition of an intangible asset or an income or profits interest; and (7) That the entire series of transactions and agreements with the purported seller of time-sharing units to the partnership and the bulk purchaser did not constitute a stop loss guarantee or other device for circumventing the at risk provisions or served to prevent the shifting of the benefits and burdens of ownership to the partnership. Petitioners contend they should *667 not be bound by Smith because "The burden of proof to be met by Petitioners in the instant case is significantly more narrow than in the Smith case." However, the issue in both cases involves petitioners' share of the partnerships' income and losses, resolution of which turns on the same threshold question; i.e., whether the transactions were entered into by the partnerships for a bona fide business or economic purpose such that the partnerships' activities constituted a trade or business of buying or selling interests in real estate. The companion doctrines of res judicata and collateral estoppel are judicially created doctrines to ensure the finality of decisions. E.g., Kremer v. Chemical Construction Corp., 456 U.S. 461, 466-467 n.6 (1982). Both doctrines are potentially applicable after the rendering of a final judgment on the merits by a court of competent jurisdiction. Under res judicata, or claim preclusion, a judgment on the merits bars a second suit which involves the same parties or their privies and is based on the same cause of action. E.g., Allen v. McCurry, 449 U.S. 90, 94 (1980); Commissioner v. Sunnen, 333 U.S. 591, 597-598 (1948). *668 Under collateral estoppel, or issue preclusion, a judgment in a prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979). Collateral estoppel applies to issues of fact or law previously litigated, even though the claims may differ. Meier v. Commissioner, 91 T.C. 273, 286 (1988). We note that in this Court each tax year of the same taxpayer is the origin of a new liability and a separate cause of action. Commissioner v. Sunnen, supra at 597. Therefore, a final judgment as to one tax year cannot be res judicata as to a different year. Commissioner v. Sunnen, supra at 598; Peck v. Commissioner, 90 T.C. 162, 165 (1988), affd. 904 F.2d 525 (9th Cir. 1990). Respondent contends that the issue in these cases is presented for different taxable years than in Smith and seeks to preclude petitioners from relitigating the issue for the years before us. Thus, we are called upon to *669 apply the doctrine of collateral estoppel, rather than res judicata. The Supreme Court in Montana v. United States, 440 U.S. 147, 155 (1979), refined the parameters for applying collateral estoppel by articulating a three-prong test: (1) Whether the issues presented in the subsequent litigation are in substance the same as those in the first case; (2) whether controlling facts or legal principles have changed significantly since the first judgment; and (3) whether special circumstances warrant an exception to the normal rules of preclusion. See Meier v. Commissioner, supra at 282-286; Estate of Best v. Commissioner, 76 T.C. 122, 134 (1981). It is clear that the three-prong test of Montana has been met: The issues presented are in substance the same, petitioners have not presented evidence of a change in controlling facts or legal principles, and petitioners have not presented, nor are we aware of, any special circumstances warranting exception. The special master's findings this Court adopted in Smith have a direct bearing on the outcome of these cases. The findings of fact *670 and conclusions of law determined in the Smith case, that the partnerships held no property interest because the transactions were not for the purchase and sale of real estate and that the deeds or mortgages were nullities, are dispositive of the issue before us. Accordingly, to the extent that respondent's determination in subsequent years relates to the partnerships' transactions with Leisure, petitioners are collaterally estopped from denying that they were not engaged in the holding of real property. As previously noted, the Court in Smith held that petitioners were bound by the findings of fact and conclusions of law in the Florida action with respect to the business dealings of Avon and Mark XV insofar as they related to Time and one of four developers, Leisure. These cases involve the partnerships' dealings with two of four developers, Leisure and Sebastian Resort Properties, Inc. Neither the special master's report nor the findings made in Smith involve transactions between the partnerships and any developer other than Leisure. Petitioners are therefore not collaterally estopped from denying that the relationship with the remaining three developers may be *671 different. While as a practical matter, on the record before us the transactions appear to be the same, if necessary, petitioners will be given an opportunity to show why these transactions should be treated differently. To reflect the foregoing, An appropriate order will be issued.
Footnotes
1. Mark XV Co., an Indiana Limited Partnership, Avon Land Co., Ltd., an Indiana Limited Partnership, and Time Marketing Corporation, an Indiana Corporation v. Leisure, Inc., a Florida Corporation doing business as Marco Resort and Club, et al.↩, Case No. 84-0715-CA-01CTC, approved and adopted on May 11, 1987, by the Circuit Court of the Twentieth Judicial Circuit.
2. This is substantially the same issue and involves the same factual inquiries as that of the instant cases; i.e., whether the partnerships' activities qualify under the real estate exception of sec. 465, I.R.C.↩