John FLEMING, as Executor of the
Estate of Robert W. Best,
Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 76–3107
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Feb. 23, 1977.

Rehearing and Rehearing En Banc
Denied March 14, 1977.

William J. Cooney, Augusta, Ga., A. Blenn Taylor, Jr., Brunswick, Ga., for plaintiff-appellant.

R. Jackson B. Smith, U. S. Atty., Edmund A. Booth, Jr., Asst. U. S. Atty., Augusta, Ga., Scott P. Crampton, Asst. Atty. Gen., Tax Div., Dept. of Justice, Gilbert E. Andrews Jr., Chief, Appellate Sect., Rodger M. Moore, Gary R. Allen, Charles E. Brookhart, Attys., Tax Div., Washington, D. C., for defendant-appellee.

Before COLEMAN, GOLDBERG and GEE, Circuit Judges.

PER CURIAM:

The district court awarded the government $967,902.58 for taxes based on taxpayer Robert W. Best's wagering activities. On this appeal the taxpayer's sole basis for challenging the judgment below is that evidence of communications lawfully intercepted by agents of the Federal Bureau of Investigation during a duly authorized wiretap should not have been disclosed to revenue agents of the Internal

* Rule 18, 5 Cir., see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir. 1970, 431 F.2d 409, Part I.

Revenue Service and therefore was inadmissible in this civil action. We reject the taxpayer's argument and affirm the decision below.

## I.

FBI agents were conducting an investigation of wagering operations in Richmond County, Georgia. The agents obtained authorization to intercept certain telephone conversations pursuant to the federal wiretap statute, 18 U.S.C. § 2510, *et seq.* The agents' actions concededly comported with all constitutional and statutory restrictions.

The investigation led to the indictment of the taxpayer and others for operating an illegal gambling business. In September 1973 the taxpayer pleaded guilty to two counts of the indictment. At the time the court accepted the pleas, testimony was given in open court concerning the contents of the intercepted telephone conversations.

Both before and after the guilty pleas and attendant testimony, FBI agents forwarded information developed from the intercepted communications to IRS special agents. The IRS special agents in turn disclosed the information, through channels, to IRS revenue agents. The revenue agents prepared the tax assessments on which the civil action at bar is based.

The taxpayer died, and his executor brought this action seeking a refund of wagering excise taxes already paid. The government counterclaimed, seeking the payment of additional taxes. The government introduced evidence of the intercepted communications. Absent that evidence, we would be unable to sustain the judgment given in the government's favor.

## II.

The taxpayer argues, quite correctly, that the federal wiretap statute does not authorize the use of wiretapping to investigate civil tax liability. This argument, however, ignores the undisputed fact that the wiretaps here were part of the investigation of criminal wagering activities clearly among those crimes covered by the wiretap statute.

See 18 U.S.C. § 2516. We do not understand the taxpayer to contend that the criminal investigation was merely a subterfuge to enable the agents to intercept communications for the purpose of bolstering their civil tax case. Indeed, in light of the criminal convictions of the taxpayer which resulted from the same wiretaps, the taxpayer would have a very difficult time substantiating such an argument.

The taxpayer argues further, however, that once having lawfully intercepted the telephone conversations as part of a criminal investigation, the government agents were not free to disclose the information they had obtained to IRS revenue agents. The taxpayer's argument rests on two premises: first, that the disclosures were not authorized by 18 U.S.C. § 2517, which places restrictions on the disclosure of information developed from wiretaps; and second, that the improper disclosure mandates exclusion of the evidence under 18 U.S.C. § 2515, which establishes the statutory exclusionary rule. Our analysis of the two statutory provisions makes us confident of only one conclusion: the statute is not a model of clarity. The statute provides no ready answer to the important issue of the extent to which information developed through wiretaps as part of criminal investigations can be disclosed to the Internal Revenue Service for use in civil tax proceedings. We decline to resolve the statutory ambiguities, for we find that whatever the exact scope of the statutory provisions, the evidence was properly admitted under the circumstances here.

## III.

We perceive only two substantial purposes that might be pursued by preventing the admission in civil tax proceedings of evidence lawfully seized as part of a criminal investigation. First, preventing the IRS from using such information might prevent the government from using criminal investigations as a subterfuge for developing information for civil tax proceedings. As indicated above, however, in this case the government actually obtained two crim-

inal convictions of the taxpayer; the criminal investigation was no pretext.[1] The second possible purpose of excluding the evidence would be to prevent the government's law enforcement officers from disclosing lawfully seized evidence to Internal Revenue Service revenue agents. The rationale for such a limitation on the dissemination of lawfully seized evidence would be the privacy interest which a person retains in his or her communications even after they have been intercepted by a narrow category of government officials. But whatever the strength of that privacy interest in other circumstances, when the intercepted communications are already part of the public record of a criminal prosecution the privacy interest is weak and does not justify excluding the evidence.

We therefore perceive no reason to exclude the lawfully seized evidence here, and we would order its exclusion only if the statute clearly required that result. The statute, however, does not do so. The statutory provision which mandates exclusion of certain evidence of intercepted communications is 18 U.S.C. § 2515:

> Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

The provision is poorly drafted. Read literally, the provision is circular; it proscribes the reception into evidence (and thus the disclosure) of information the disclosure of which "would be in violation of this chapter." "Disclosure" apparently refers to disclosure at trial rather than disclosure among various departments of the government at some earlier point; otherwise, the statute would presumably refer to information the disclosure of which "has been" in violation of the chapter. At any rate, the provision should not be read in an overly literal fashion. The section's primary purpose is apparently to exclude evidence derived from illegal, rather than legal, wiretaps. The section's main thrust is therefore to exclude evidence the *seizure* of which was in violation of the chapter, not evidence the *disclosure* of which was or would be in violation of the chapter. Indeed, the government argues that the section's sole application is to instances of illegal wiretaps.

But even if we were to accept the taxpayer's argument that § 2515 mandates the exclusion of evidence that has been unlawfully disclosed by one government agent to another, the taxpayer could prevail here only by establishing that § 2517 proscribes the disclosure of information seized in a lawful wiretap to IRS revenue agents. The section contains two provisions, however, which may authorize such disclosure. First, § 2517(2) provides:

> Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire or oral communication or evidence derived therefrom may use such contents to the extent such use is appropriate to the proper performance of his official duties.

The disclosure by an investigative or law enforcement officer of the contents of an intercepted communication to IRS revenue agents may constitute "use" of such contents that is "appropriate to the proper performance of his official duties."

---

1. Under these circumstances we find no justification for applying a broad prophylactic rule excluding evidence in all proceedings other than those dealing with the crimes enumerated in § 2516. This conclusion, however, should not be read as an endorsement, in other situations, of a case-by-case, after-the-fact analysis of whether the original criminal investigation was a pretext. We note only that, whether or not such an analysis should be replaced by a prophylactic rule in other circumstances (an issue upon which we express no view), any such prophylactic rule need not be applied and the evidence need not be excluded when the original criminal investigation has resulted in conviction.

The second provision that may authorize the disclosure is § 2517(3):

> Any person who has received, by any means authorized by this chapter, any information concerning a wire or oral communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State or political subdivision thereof.

This provision applies to civil as well as criminal proceedings[2] and apparently would have allowed the FBI agents to testify in the case at bar.[3] A reasonable interpretation of that authorization to give testimony may include the authorization to disclose the contents of the testimony before trial to the IRS revenue agents responsible for preparing the assessments on which the trial will be based.[4]

### IV.

 Because of these statutory ambiguities, we must interpret the statute in light of its purposes. As we have indicated, excluding the lawfully seized evidence in this civil tax proceeding would serve no purpose. We therefore uphold the district court's refusal to exclude it. In so holding, we make no effort to define with greater precision the limitations imposed by the statute. We hold only that evidence derived from communications lawfully intercepted as part of

a bona fide criminal investigation that results in the taxpayer's conviction may properly be admitted in a civil tax proceeding, at least when the evidence is already part of the public record of the prior criminal prosecution. The judgment below is affirmed.

---

2. The statute originally applied only to "any criminal proceeding" but was amended in 1970 to include "any proceeding." Pub.L.No.91–452, Title IX, § 902(b), 84 Stat. 947. *See* H.Rep.No.91–1549, 1970 U.S.Code Cong. & Admin.News pp. 4007, 4036 (1970).

3. Such testimony may be received in the trial of matters other than those upon which the original wiretap authorization was based only "when authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents were otherwise intercepted in accordance with the provisions of this chapter." 18 U.S.C. § 2517(5). The application must be made "as soon as practicable." *Id.* The parties have

stipulated that the trial court entered such orders here. (A.49).

4. The government does not attempt to rely upon § 2517(1), which authorizes certain disclosures to "investigative or law enforcement" officers. The government acknowledges that IRS revenue agents, unlike IRS special agents, are not "investigative or law enforcement officers" within the statutory definition, 18 U.S.C. § 2510(7).