W. Russell BILBO and Doris M. Bilbo, (Doris M. Bilbo, as executrix of the estate of W. Russell Bilbo, substituted in place and stead of W. Russell Bilbo, deceased), Plaintiffs–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

No. 79–2673.

United States Court of Appeals, Fifth Circuit. Unit B

Jan. 5, 1981.

Herbert Shafer, Atlanta, Ga., James K. O'Malley, Pittsburgh, Pa., for plaintiffs–appellants.

William L. Harper, U. S. Atty., Atlanta, Ga., Richard Farber, Francis J. Gould, Richard D. Buik, Tax Div., Dept. of Justice, Washington, D. C., for defendant–appellee.

Before TUTTLE, GODBOLD and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

Taxpayer Doris M. Bilbo[1] appeals a district court's refusal to enjoin the assessment and collection of certain taxes allegedly due the government. We have determined that the district court properly held this action barred by the Tax Code's Anti–Injunction Act, 26 U.S.C.A. § 7421(a) (Cum.Supp.1980) and accordingly, we affirm.

### I. Facts

Following a 1974 Georgia state investigation of wagering operations, W. Russell Bilbo and others were indicted in two Georgia counties, Cobb and Paulding, for illegal gambling. State investigators furnished the Internal Revenue Service with information obtained in the probe including information intercepted by way of telephone wiretapping. In December 1975, the IRS informed the taxpayers that it was proposing to assess more than $1.6 million in unpaid wagering excise taxes for prior tax years. Again, in July 1978, taxpayers were informed that the IRS was proposing to charge them with unreported income of nearly $100,000 for tax year 1974. The 1975 communication to taxpayers stated specifically that the "[i]nformation [was] obtained from a wiretap of your [Bilbo's] operation . . . ." Record at 49. The 1978 communication did not state the source of the information but taxpayers have alleged on belief that the data was obtained from several wiretaps.

On June 5, 1979 taxpayers filed a complaint for a temporary restraining order and preliminary injunction, invoking 28 U.S.C. §§ 1331, 1340 (1976) supported by the requisite amount in controversy as bases for federal jurisdiction. They alleged that the state wiretaps involved were illegal and were the subject of suppression motions in the state court system.[2] Because the wiretaps allegedly were illegal and because further disclosure of the information by the IRS would also be illegal, the IRS would never be able to prove the assessments. By order of June 13, 1979, the district court denied the relief sought and dismissed the case.

### II. Our Decision

The Tax Code's Anti–Injunction Act, 26 U.S.C.A. § 7421(a) (Cum.Supp.1980), provides with certain statutory exceptions not pertinent here that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was

---

1. Counsel informed the Court at oral argument that W. Russell Bilbo, plaintiff–taxpayer in the district court proceedings, had died. To maintain consistency, however, we will hereafter refer to "taxpayers" in this opinion.

2. By order dated October 24, 1979, the Superior Court for the County of Paulding, Georgia granted the suppression motion. We deal with the effect of this fact in Part II *infra.*

assessed." The Supreme Court in *Enochs v. Williams Packing & Navigation Co., Inc.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962) [3] explained that "[t]he manifest purpose of § 7421(a) is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal rights to the disputed sums be determined in a suit for refund." In *Bob Jones University v. Simon,* 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974), the Court drew upon the teaching of *Williams Packing* and held that the literal terms of the Anti–Injunction Act would be avoided only upon proof of the existence of two factors: (1) a showing that the government "under no circumstances," *id.* at 737, 94 S.Ct. at 2046 (quoting *Williams Packing, supra,* 370 U.S. at 7, 82 S.Ct. at 1129) could ultimately prevail; and (2) a showing of irreparable injury, *Bob Jones University, supra,* 416 U.S. at 737–38, 94 S.Ct. at 2046–2047. *See also Lucia v. United States,* 474 F.2d 565, 575–76 (5th Cir. 1973) (en banc); *Bowers v. United States,* 423 F.2d 1207, 1208 (5th Cir. 1970).

These factors, then, form the analytical basis of our decision. We need not, however, reach the second factor because taxpayers have not persuaded us that the government would be unable ultimately to prevail on the merits of this action.

As an initial matter, taxpayers point out that the wiretap evidence at issue was suppressed in a state criminal prosecution *because* it was disclosed to federal officials.[4] Since there has been no public disclosure of this evidence to date, taxpayers argue, and since such disclosure is precluded by the successful suppression motion, the Internal Revenue Service will not–according to its own statements–[5] reveal the contents of the wiretaps. Thus, the argument continues, the Service would under no circumstances prevail on the merits of the case. Taxpayers further argue that the relevant authorities in this Circuit, *Griffin v. United States,* 588 F.2d 521 (5th Cir. 1979) and *Fleming v. United States,* 547 F.2d 872 (5th Cir.), *cert. denied,* 434 U.S. 831, 98 S.Ct. 113, 54 L.Ed.2d 90 (1977), carefully limit the use of criminal wiretaps in civil tax cases.

We find these arguments unpersuasive on several grounds. First, the IRS letter, even if binding on the Service, only addresses the issue of releasing a wiretap surveillance transcript. It does not commit the Service to cast aside names, dates, addresses, potential witnesses and potential leads that could be gleaned from the intercepted conversations and used in a civil tax proceeding against taxpayers. Second, *Griffin* and

**3.** Admittedly, the literal terms of the Anti Injunction Act have not always been observed strictly by the Court, *see, e. g., Hill v. Wallace,* 259 U.S. 44, 42 S.Ct. 453, 66 L.Ed. 822 (1922). But *Williams Packing* signaled the end to any lingering judicial ambivalence concerning the Act. Twelve years after that case was decided the Court characterized it as "the capstone to judicial construction of the Act" designed to spell "an end to a cyclical pattern of allegiance to the plain meaning of the Act ...." *Bob Jones University v. Simon,* 416 U.S. 725, 742, 94 S.Ct. 2038, 2048, 40 L.Ed.2d 496 (1974). *But cf. Comm'r v. Shapiro,* 424 U.S. 614, 634–35, 96 S.Ct. 1062, 1074, 47 L.Ed.2d 278 (1976) (Blackmun, J., joined by Rehnquist, J., dissenting).

**4.** The suppression was pursuant to Ga.Code Ann. § 26–3004(k) (1977 rev.), which provides:
Any publication of the information or evidence obtained under a warrant issued hereunder other than that necessary and essential to the preparation of and actual prosecution for the crime specified in the warrant shall be an unlawful invasion of privacy under this Chapter, and shall cause such evidence and

information to be inadmissible in any criminal prosecution.

**5.** The text of the letter, which appears in the Record, is as follows:
This is in response to your letter dated March 5, 1979, to Mr. Jeff Lewis, Regional Disclosure Officer. We are responding because the file of the taxpayers was initiated in this office. The Internal Revenue Service has made no wire interception in this case. We neither confirm nor deny that such a surveillance was made by any other law enforcement agency; however, we would be prohibited from releasing a transcript of any surveillance made by another agency, if in our possession, until such data becomes a public record.
If you have any questions, please contact the person whose name and address are shown above.
Letter from John W. Henderson, IRS District Director, to James K. O'Malley (April 3, 1979), Record at 56.

*Fleming* provide no support for taxpayers' contentions. In *Fleming*, for example, taxpayer argued that 18 U.S.C. § 2515 (1976) prevented admission in a civil tax proceeding of evidence seized, albeit lawfully, in a federal *criminal* investigation. The court, however, upheld the admission and explained that the "main thrust" of § 2515 is "to exclude evidence the *seizure* of which was in violation of the chapter, not evidence the *disclosure* of which was or would be in violation of the chapter." 547 F.2d at 874. Not only have taxpayers here failed to show—at this premature stage—any illegal seizure, but such an issue should not be preemptively resolved in a tax injunction suit, *see Brittingham v. Comm'r*, 451 F.2d 315, 317–18 (5th Cir. 1971).

We are, to conclude, unconvinced that the government would be unable under any circumstances to prevail on the merits of this action. Such being the case, the questions that taxpayers raise—which mainly deal with admissibility of evidence—should be directed to the tax forum [6] of their choice. "[N]o suit ... shall be maintained ...." 26 U.S.C. § 7421(a) (Cum.Supp.1980), means *no suit shall be maintained.*

The decision of the district court, denying the relief sought, is

AFFIRMED.

---

**6.** Indeed, this is implicitly recognized in the cases that taxpayers call to our attention.

Both *Griffin* and *Fleming* were refund suits, not injunction actions.