John W. SPATAFORE,
Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

C.A. No. 83–6062.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 7, 1984.

Decided Jan. 22, 1985.

**416**

Sebastian D. D'Amico, San Diego, Cal., for plaintiff-appellant.

Farley P. Katz, Washington, D.C., for defendant-appellee.

Before: WALLACE and BOOCHEVER, Circuit Judges, and JAMESON,* District Judge.

JAMESON, District Judge:

Appellant, John W. Spatafore, brought this action seeking refund of a portion of a wagering tax which he had paid under protest. The United States counterclaimed for the recovery of the unpaid portion of the tax. Following a non-jury trial, judgment was entered in favor of the United States on its counterclaim. We affirm.

I. *Facts and Proceedings Below*

Following months of observation during late 1972 and 1973 the Department of Justice obtained a court order, pursuant to 18 U.S.C. § 2518, which found that there was probable cause to believe that Spatafore, Frank S. Pezzino, and others were operating an illegal bookmaking business, and authorized special agents of the FBI to intercept communications made over Pezzi-

no's telephone. FBI agent Slattum monitored the wiretap and prepared a verbatim transcript of the conversations. The wiretap, which was conducted from November 16, 1973 until December 1, 1973, revealed an illegal bookmaking operation with the wagers primarily on football games. Spatafore made regular calls, inquiring about business and providing Pezzino with line information.

On December 10, 1973, the tape recordings were put under seal with instruction that the recordings be disclosed only upon the order of the court or as provided in 18 U.S.C. § 2517. Spatafore and Pezzino, based on the information obtained from the surveillance and the wiretap, were indicted on November 19, 1974. They were charged with conspiracy and interstate transmission of wagering information. In separate trials both were convicted. Spatafore pleaded *nolo contendere* to one count of the indictment on May 7, 1975. On the basis of this plea, he was found guilty of engaging in the business of betting and wagering, and of knowingly using a telephone communication in such business. He was fined $7,500.

In July, 1974, a special agent of the FBI transmitted a copy of the intercepted conversations to Naurbon L. Perry, a special agent of the Internal Revenue Service (IRS) assigned to the Los Angeles Strike Force. In turn Special Agent Perry transmitted a copy of the wiretap transcript to Gene Nordlund, an IRS revenue agent, who made a tax assessment pursuant to 26 U.S.C. § 4401, against Spatafore for the last four months of both 1972 and 1973 in the total amount of $77,829.60.

On November 1, 1977, Spatafore brought an action seeking an injunction against collection of the tax. That suit was dismissed on the ground that Spatafore had an adequate remedy at law; i.e., he could pay the tax and sue for a refund. On March 27, 1978 Spatafore paid tax on a $75.00 wager and on February 14, 1979, filed this action

---

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

for a refund. The United States counterclaimed for the unpaid portion of the tax assessment.

Following a trial on December 19, 1982, the district court found that the evidence produced by the United States failed to establish that Spatafore was involved in accepting bets and wagers on sporting events during the last four months of 1972. The court found, however, that the United States did produce sufficient evidence establishing Spatafore's involvement in the gambling operation for the period September through December, 1973; that Spatafore failed to carry his burden of showing the Commissioner's assessment was wrong; and that Spatafore was subject to the 10% tax on wagers as imposed by section 4401 for the period September through December, 1973, in the amount of $39,024.80.

## II. Contentions on Appeal

Appellant contends that the district court erred in (1) denying plaintiff's motion to suppress the wiretap information; (2) finding that plaintiff was in the business of accepting wagers during the last four months of 1973; (3) determining that the evidence was sufficient to sustain the computation and assessment of the tax for 1973; and (4) denying plaintiff's motion to strike certain testimony as irrelevant.

## III. Denial of Motion to Suppress Wiretap Evidence

Appellant contends that neither prerequisite set by the court for disclosure of the wiretap information was satisfied. It is undisputed that the court did not order the disclosure. Appellant argues that the disclosure to the IRS was not authorized by 18 U.S.C. § 2517.

Under 18 U.S.C. § 2517(1) an investigative or law enforcement officer may disclose his knowledge or evidence derived from electronic surveillance "to another investigative or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure." The investigative or law enforcement officer receiving the contents of the disclosure may then "use such

contents to the extent such use is appropriate to the proper performance of his official duties." § 2517(2). Any person receiving any authorized information concerning a wire or oral communication "may disclose the contents of that communication or ... derivative evidence while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State...." § 2517(3).

Relying upon *Fleming v. United States*, 547 F.2d 872 (5th Cir.1977), *cert. denied*, 434 U.S. 831, 98 S.Ct. 113, 54 L.Ed.2d 90 (1978), the district court held that section 2517 permitted disclosure of the wiretap information to agents of the Internal Revenue Service. As noted by the district court, *Fleming* was an action by the executor of the estate of a taxpayer for refund of the wagering excise tax. FBI agents obtained authorization to intercept telephone conversations. The taxpayer was indicted for illegal gambling activity and pleaded guilty to two counts. Both before and after the guilty plea, the FBI agents forwarded information developed from the wiretap to IRS special agents who, in turn, disclosed the information to the IRS revenue agents. After a careful analysis of section 2517, the court held that under the facts of that case sections 2517(2) and 2517(3) permitted the disclosure. The court concluded that "evidence derived from communications lawfully intercepted as part of a bona fide criminal investigation that results in the taxpayer's conviction may properly be admitted in a civil tax proceeding, at least when the evidence is already part of the public record of the prior criminal prosecution." 547 F.2d at 875.

Appellant's argument that the use by the IRS of the fruits of the surveillance was an unauthorized intrusion into his right to privacy was also effectively answered in *Fleming*. The court balanced the need of the IRS for the information with the privacy interest that the individual retains in his communications even after the government has intercepted them. It concluded: "[W]hatever the strength of that privacy

**418**

interest in other circumstances, when the intercepted communications are already part of the public record of a criminal prosecution the privacy interest is weak and does not justify excluding the evidence." *Id.* at 874.

■ The wiretap evidence here, as in *Fleming,* is a part of the record in a criminal case.[1] We agree with the conclusion of the Fifth Circuit in *Fleming*[2] and hold that the district court properly denied plaintiff's motion to suppress or exclude the wiretap evidence.

### IV. *Sufficiency of Evidence*

■ Appellant next contends that there is insufficient evidence to support the district court's finding that he was involved in wagering from September through December, 1973. The wiretap revealed that Pezzino was accepting wagers on football games and that appellant would make regular calls to Pezzino, inquiring about business and providing line information. The wiretap was conducted from November 16 until December 1. The district court found that appellant had been engaged in wagering throughout the football season, i.e., September through December. We cannot say that this finding was clearly erroneous. Fed.R.Civ.P. 52(a). We are not "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541–42, 92 L.Ed. 746 (1948). The district court drew a reasonable inference from the evidence presented.

### V. *Method of Calculating Wagers*

[3–5] In a tax deficiency suit the Government has the initial burden of offering some substantive evidence showing that the taxpayer received income from the charged activity. *Weimerskirch v. Com-*

*missioner,* 596 F.2d 358, 360 (9th Cir.1979). When this burden is met, the deficiency determination is presumed to be correct. The taxpayer must then come forward with sufficient evidence to support a finding contrary to the IRS's determination. *Rockwell v. Commissioner,* 512 F.2d 882, 885 (9th Cir.1975), *cert. denied,* 423 U.S. 1015, 96 S.Ct. 448, 46 L.Ed.2d 386 (1976). If the taxpayer is successful in rebutting the presumption, the Government then carries the ultimate burden of persuasion in disputes over whether the taxpayer received certain funds as income. *Id.* at 885–86.

■ The Government used an extrapolation procedure to determine the total amount of wagers received by appellant during the last four months of 1973. The wiretap revealed that during the week of November 17 to November 23 he received $24,253 in wagers on various football games. The Government found this amount to be representative of the football wagers taken in each week of the 16 week football season. For the 16 week period the Government determined that appellant received $388,048 in football wagers. The wiretap also revealed a horse race wager of $2,200 which was added to the football wagers, making a total of $390,248. The excise tax on wagers made in 1973 was 10%. 26 U.S.C. § 4401 (pre-1974 amendment which changed 10% to 2%). The tax assessment was $39,024.80.

The district court found that the Government had produced evidence to support an inference of appellant's involvement in taking wagers for the last four months of 1973. Finding that he had not overcome the presumption of correctness which had attached, the court ordered appellant to pay the $39,024.80.

---

**1.** The case of *Scott v. United States,* 573 F.Supp. 622 (M.D.Tenn.1983), upon which appellant relies, is distinguishable. Scott was never charged or tried in any criminal prosecution. The evidence was not part of a public record. The court in *Scott* recognized this distinction. Note 18 at 628.

**2.** *See also Griffin v. United States,* 588 F.2d 521 (5th Cir.1979), where, under similar facts, the court followed *Fleming* in holding that duly authorized wiretap evidence of a wagering operation was properly admitted in a civil action seeking refund of money seized during law enforcement raids of their homes.

In an attempt to rebut the presumption of correctness, appellant called as an expert witness a professor of accounting at San Diego State University. He testified that the amount of wagers received over a one week period has no relationship to wagers received for any other week, and that the extrapolation method was unreasonable. This court, however, has approved the Government's method of determining total wagers: "Extrapolation is a permissible method of proving the volume of unreported wagers." *Schildcrout v. McKeever,* 580 F.2d 994, 999 (9th Cir.1978); *Gordon v. Commissioner,* 572 F.2d 193, 195 (9th Cir. 1977), *cert. denied,* 435 U.S. 924, 98 S.Ct. 1488, 55 L.Ed.2d 517 (1978). In addition, as pointed out by the district court, appellant did not produce any records or other testimony which would establish the correct amount of bets and wagers during the assessment period. Appellant did not come forward with enough evidence to support a finding that the IRS's assessment was erroneous. The district court correctly ordered him to pay the assessed amount.

VI. *Testimony of FBI agent Slattum*

 Finally, appellant contends that the testimony of FBI agent Slattum is irrelevant to computations made by IRS revenue agent Nordlund. Nordlund had not communicated with Slattum when he assessed the taxes. Therefore, appellant argues, the court should have granted his motion to strike Slattum's testimony.

Rule 401 of the Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. The Government had the burden of presenting evidence that appellant was involved in wagering. *Weimerskirch v. Commissioner,* 596 F.2d 358, 360 (9th Cir.1979). Slattum's testimony explained the significance of the intercepted telephone conversations. He testified that Pezzino, as appellant's agent, accepted wagers over the phone. He explained that the line information given by

appellant to Pezzino is the point spread on which wagers are based. Slattum's testimony tends to make appellant's involvement in wagering more probable. The district court correctly denied appellant's motion to strike.

Finding no reversible error, we affirm the judgment of the district court.

AFFIRMED.