Richard J. SMITH, Plaintiff–Appellee,

v.

SECURITIES AND EXCHANGE
COMMISSION, Defendant–
Appellant (95–5862/6625),

Elaine Cacheris; Sandy Harris; David M. Rosen; and any other persons acting in concert therewith, Defendants–Appellants (95–5862), Defendants (95–6625).

Nos. 95–5862, 95–6625.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 4, 1996.

Decided Nov. 12, 1997.

James A. Brigagliano (argued), Richard M. Humes (briefed), Paul P. Andrews, U.S. Securities And Exchange Commission, Washington, DC, for Defendants–Appellants.

Ames Davis (argued and briefed), Nancy S. Jones, Waller, Lansden, Dortch & Davis, Nashville, TN, for Plaintiff–Appellee.

Before: MARTIN, Chief Judge; MERRITT, KENNEDY, CONTIE, NELSON, RYAN, BOGGS, NORRIS, SUHRHEINRICH, SILER, BATCHELDER, DAUGHTREY, MOORE, and COLE, Circuit Judges.

BOGGS, J., delivered the opinion of the court, in which KENNEDY, CONTIE, RYAN, ALAN E. NORRIS, SUHRHEINRICH, SILER, and BATCHELDER, JJ., joined. MERRITT, J. (pp. 364–365), delivered a separate dissenting opinion, in which BOYCE F. MARTIN, Jr., C.J., and DAVID A. NELSON, DAUGHTREY, MOORE, and COLE, JJ., joined.

## OPINION

BOGGS, Circuit Judge.

In these appeals, the Securities and Exchange Commission (SEC) and three

agents of its Pacific Regional Office ask this court to vacate two preliminary injunctions issued against them by the court below. In No. 95–5862, the SEC and the agents appeal an order issued by United States District Judge John T. Nixon on May 9, 1995, enjoining them from using any evidence derived from a tape recording in its possession, made by a private party allegedly in violation of the Wiretap Act, 18 U.S.C. § 2510 *et seq.* In No. 95–6625, the SEC appeals an order issued on November 15, 1995, by Judge Nixon enjoining it from prosecuting a civil enforcement action it had filed in the United States District Court for the Central District of California against the plaintiff in this action, Richard Smith.[1] For the reasons discussed herein, we vacate both injunctions.

# I

Smith formerly was the North American Sales Manager for PDA Engineering, Inc., in its Nashville, Tennessee, office. On or about June 19, 1993, he left a message in the voice mailbox of a Los Angeles, California, employee of PDA that included the following ill-advised admission:

> Anyway, finally I sold all my stock off on Friday and I'm going to short the stock because I know it's going to go down a couple of points here in the next week, as soon as Lou releases the information about next year's earnings.

The message also contained information of a more personal nature. Another PDA employee in the Los Angeles office, Linda Alexander–Gore, retrieved that message without permission, and recorded it with a hand-held tape recorder. She passed the tape on to a third employee, Robert Phillips, who called the United States Attorney's Office for the Central District of California and spoke at length about the tape to AUSA Bart Williams.

Williams informed an FBI agent of the tip, and the FBI agent passed that information on to the Pacific Regional Office of the SEC. On November 30, 1993, the SEC issued a formal order of investigation against Smith. As part of this investigation, the SEC issued a subpoena duces tecum to Phillips, ordering him to produce the tape of the voice-mail message, and Phillips complied.

Upon learning that the SEC possessed the tape recording, on January 12, 1995, Smith brought an action in the United States District Court for the Middle District of Tennessee for declaratory and injunctive relief under 18 U.S.C. § 2520. The action was assigned to Judge Nixon. On Smith's motion for a preliminary injunction, the district court enjoined the SEC "from any use of the recording of the conversation in question or any information derived therefrom for any purpose." Order, May 9, 1995. In its memorandum opinion, the district court reasoned that the SEC would not be harmed by the injunction:

> According to the SEC, the tape is not the only evidence which may implicate plaintiff's involvement in insider trading. Therefore, an injunction enjoining the use of the tape would not necessarily hinder the SEC's investigation of plaintiff and PDA. Upon completion of its investigation, the SEC is still free to bring suit against plaintiff concerning this matter.

Memorandum Opinion, May 10, 1995, at 6–7.

The SEC filed a civil enforcement action against Smith in the United States District Court for the Central District of California in September 1995, which was assigned to Judge Mariana R. Pfaelzer. *S.E.C. v. Smith,*

---

**1.** This case has proceeded in the district court and in this court under seal and under a John Doe caption. The SEC has filed a motion to unseal the record, which Smith has not opposed. Although there is a strong presumption that court files will be open to the public, a court has the power to seal files where a party's interest in privacy may outweigh the public interest in disclosure. *See In re Knoxville News–Sentinel Co.,* 723 F.2d 470, 474 (6th Cir.1983); *Brown & Williamson Tobacco Corp. v. FTC,* 710 F.2d 1165, 1177 (6th Cir.1983). Ordinarily, such an order by the district court is reviewed by this court only for an abuse of discretion. However, in the present case circumstances have changed since the SEC filed its notices of appeal. Smith acquiesced in the unsealing of the transcript of the tape by the California criminal court, *see* note 3 *infra* and accompanying text, thereby obviating any argument on his part that the transcripts should not be part of the public record. Therefore, we GRANT the appellants' motion to unseal the record. *See Miller v. Indiana Hosp.,* 16 F.3d 549, 551–52 (3d Cir.1994).

Civ. No. 95–6440 MRP (C.D.Cal.). In response, Smith filed two motions in the Tennessee court: a motion for contempt, and a motion for a second preliminary injunction ordering the SEC not to proceed in the California civil action. Judge Nixon stayed consideration of the first motion, but granted the second motion, ordering that the SEC "is hereby enjoined from prosecuting its previously filed enforcement action in California." Order, Nov. 15, 1995. Judge Nixon reasoned that the injunction was necessary to preserve his ability to decide the ultimate issues in the case before it: whether the SEC's acquisition of the tape was in violation of the Wiretap Act, and if so whether the SEC had used information derived from that tape in prosecuting Smith:

> This Court was first to assert jurisdiction over this matter when it issued a preliminary injunction enjoining the SEC's use of the tape.... If the present enforcement action is allowed to proceed in California, faced with essentially the same issues that are presently pending in this Court, it will interfere with this Court's ability to fully adjudicate the claims over which it currently presides. Principles of comity and judicial economy favor an injunction against the SEC's further prosecution of the California action.

Memorandum Opinion, Nov. 15, 1995, at 4.

The SEC has brought separate appeals of both injunctions, and we have consolidated the appeals for consideration. During the pendency of these appeals, on May 23, 1996, a grand jury of the United States District Court for the Central District of California indicted Smith on eleven counts of insider trading, in violation of 15 U.S.C. § 78j, and one count of obstruction of a proceeding before the SEC, in violation of 18 U.S.C. § 1505. *United States v. Smith*, No. CR 96–517–HLH (C.D.Cal.). The next day, Smith moved Judge Nixon to enjoin the criminal proceeding, but Judge Nixon declined to do so.[2]

The criminal case was assigned to Judge Harry L. Hupp. Judge Hupp granted Smith's motion to suppress the tape from evidence, and dismissed part of the count under § 1505, concluding that the evidence supporting one of the government's allegations of obstruction of justice had been derived from the tape. However, he also found that the government's remaining evidence of insider trading was derived not from the tape, but from the government's independent investigation of the facts. Accordingly, Judge Hupp denied Smith's motion to suppress all of the evidence in the case and to dismiss all counts of the indictment.

The government moved Judge Hupp to unseal the records in that case, including the transcript of the tape. Smith—who was represented by different counsel in the criminal action than in the Tennessee action—did not oppose the motion,[3] and on October 25, 1996, the court unsealed the records. On November 6, 1996, a jury found Smith guilty on all eleven insider trading counts.[4] Smith filed a motion for a new trial, and placed another copy of the transcript of the tape in the public record by attaching it as an exhibit to his motion. On February 24, 1997, Judge Hupp denied Smith's motion for a new trial, sentenced him to fifteen months of imprisonment, and entered final judgment. Smith has appealed that judgment to the United States Court of Appeals for the Ninth Circuit.

A panel of this court vacated both of the injunctions issued by the Tennessee court. *Doe v. S.E.C.*, 86 F.3d 589 (6th Cir.1996). The full court vacated the judgment announced by the panel and set the case for rehearing en banc. *Doe v. S.E.C.*, 86 F.3d 599 (6th Cir.1996).

---

**2.** Smith appealed to this court. After this court refused to award Smith an injunction during the pendency of the appeal, *Doe v. S.E.C.*, No. 96–5684 (6th Cir. May 28, 1996), Smith withdrew his appeal.

**3.** At a hearing before the criminal court, Smith's counsel stated affirmatively that he would consult with the Tennessee counsel, and that the court could assume that Smith had agreed to unseal the record if an objection was not filed within a week. No such objection was ever filed.

**4.** Judge Hupp ultimately dismissed the obstruction of justice count.

## II

▪ We proceed now to the merits of each injunction. We consider first the November 15, 1995, order enjoining the SEC from prosecuting its civil enforcement action against Smith. "As between federal district courts, ... though no precise rule has evolved, the general principle is to avoid duplicative litigation." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). When a federal court is presented with such a duplicative suit, it may exercise its discretion to stay the suit before it, to allow both suits to proceed, or, in some circumstances, to enjoin the parties from proceeding in the other suit. *See Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.,* 342 U.S. 180, 183–84, 72 S.Ct. 219, 221–22, 96 L.Ed. 200 (1952). We review this decision only for an abuse of discretion. *See Roth v. Bank of Commonwealth,* 583 F.2d 527, 538 (6th Cir. 1978), *cert. dismissed,* 442 U.S. 925, 99 S.Ct. 2852, 61 L.Ed.2d 292 (1979). In weighing these three options, courts often proceed, as the court below apparently did, under the rule of thumb that the entire action should be decided by the court in which an action was first filed. *See, e.g., West Gulf Maritime Ass'n v. ILA Deep Sea Local 24,* 751 F.2d 721, 729 (5th Cir.1985).

▪ However, a court abuses its discretion when it enjoins a party from proceeding in another suit that is not truly duplicative of the suit before it. "[T]he one must be materially on all fours with the other.... [T]he issues 'must have such an identity that a determination in one action leaves little or nothing to be determined in the other.'" *Congress Credit Corp. v. AJC Int'l, Inc.,* 42 F.3d 686, 689 (1st Cir.1994) (quoting *Thermal Dynamics Corp. v. Union Carbide Corp.,* 214 F.Supp. 773, 774 (S.D.N.Y.1963)); *see also Computer Associates International v. Altai, Inc.,* 893 F.2d 26, 29 (2d Cir.1990) (improper to enjoin related proceeding where claim therein would not have been compulsory counterclaim); *I.A. Durbin, Inc. v. Jefferson Nat'l Bank,* 793 F.2d 1541, 1551 (11th Cir.1986); *Merrill Lynch, Pierce, Fenner & Smith v. Haydu,* 675 F.2d 1169, 1173 (11th Cir.1982).

In the present case, the Tennessee suppression action and the California civil action are not identical. The California court, if allowed to proceed, would focus on an issue not presented in the Tennessee action, to wit, whether Smith is liable for insider trading. *Kerotest* affords the lower courts the discretion to resolve problems of duplicative litigation under the assumption that those courts will "giv[e] regard to conservation of judicial resources and comprehensive disposition of litigation," 342 U.S. at 183, 72 S.Ct. at 221; in the present case, the district court abused that discretion, since its injunction only served to ensure that the matters in dispute between Smith and the SEC would be disposed of in piecemeal fashion.

▪ Not only does the Tennessee court not have the ultimate issue of liability before it, it is doubtful that it could assume jurisdiction over the enforcement action even if it so desired; Congress has specifically provided that a civil enforcement action filed by the SEC may be "consolidated or coordinated" with another suit not brought by the SEC only upon the agency's consent. *See* 15 U.S.C. § 78u(g). Where one federal court lacks the authority to assume jurisdiction over the entire matter in dispute, it abuses its discretion when it enjoins another federal court with such authority from doing so. *See Cowden Mfg. Co. v. Koratron Co.,* 422 F.2d 371, 372 (6th Cir.1970) (district court did not abuse discretion in declining to enjoin proceeding before another court with exclusive jurisdiction over central issue in litigation).

▪ The court below reasoned that the injunction was necessary in order for it to preserve its jurisdiction to decide the issues before it. But, absent some particular reason to favor one forum, a federal court does not have the power to destroy the jurisdiction of a sister court for the sole purpose of preserving its own.

Federal courts of coordinate rank, however, owe each other comity in the sense of respecting each other's orders and avoiding hindering each other's proceedings. This is not as demanding as the deference demanded of federal courts to certain kinds of state proceedings under absten-

tion doctrines or the Anti–Injunction Act. But it requires clear justification before a federal court may interfere with the jurisdiction of another federal court.

11A C. WRIGHT, A. MILLER, & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 2942 at 59 n. 43 (2d ed.1995) (quoting Edward F. Sherman, *Class Actions and Duplicative Litigation*, 62 IND. L.J. 507, 518 (1987)); *see also CFTC v. Chilcott Portfolio Management, Inc.*, 713 F.2d 1477, 1484 (10th Cir.1983); *Bergh v. Washington*, 535 F.2d 505, 507 (9th Cir.1976). No such clear justification was present in this case. If Judge Nixon were correct to reason that he had to choose to destroy either his power to proceed or Judge Pfaelzer's, his lack of authority over the entire matter in controversy would have counseled in favor of restraint. Thus, the court below destroyed comity in the name of preserving it.

▮▮▮▮ Even if the court below were correct to reason that the possibility that Judge Pfaelzer would decide issues relevant to the case before it was sufficient grounds for an injunction, subsequent developments have made clear that the civil action poses no such threat. Smith has now been convicted of eleven counts of insider trading, in violation of 15 U.S.C. § 78j. In order to prevail in the civil action, the SEC now needs only to move for summary judgment on the basis of the collateral estoppel effect of that conviction. *See S.E.C. v. Bilzerian*, 29 F.3d 689, 694 (D.C.Cir.1994).[5] Thus, there is no need for Judge Pfaelzer to consider the issues before Judge Nixon, nor is there any need for Judge Nixon to enjoin Judge Pfaelzer from resolving the one issue that will be before her.

Accordingly, the November 15 injunction is vacated.[6]

### III

▮▮▮▮ The May 9 injunction also must be vacated, as it has become moot. Smith's conviction collaterally estops him from asserting that the whole of the government's investigation became tainted by its receipt of the voice mail tape. The decision of a federal court is entitled to collateral estoppel effect if four elements are satisfied:

(1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Detroit Police Officers Ass'n v. Young*, 824 F.2d 512, 515 (6th Cir.1987). Smith litigated the question of whether the evidence against him obtained by the SEC and by the United States Attorney was illegally derived from the government's possession of the voice mail tape. Judge Hupp's refusal to suppress the evidence was necessary to the outcome of the criminal case, since the parties agree that, had the evidence been suppressed, all of the counts in the indictment would have been dismissed. The criminal case has resulted in a final judgment,[7] and Smith has raised no argument that he did not have a full and fair opportunity to litigate his suppression motion before Judge Hupp. Therefore, Smith is now

---

**5.** The SEC has argued that the criminal conviction has rendered this injunction moot. However, the SEC confuses the issue of mootness with the merits. A case (or an injunction) is only moot if, assuming that the plaintiff receives the relief which he or she requests, such relief would no longer afford any meaningful legal benefit. *See McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 458 (6th Cir.1997) (en banc). In the present case, Smith clearly would benefit if the November 15 injunction continues to stand, since he avoids the adjudication of civil liability that would inevitably result once the civil enforcement action is allowed to proceed.

**6.** The dissent states (page 364, *infra*) that it would not vacate this second injunction, but in-

stead would only "modif[y]" the order to make clear that it only prohibits the use of the tape or evidence derived therefrom, and that it does not "impl[y]" that the civil enforcement action is enjoined. Because the dissent proposes the identical course of action as does the court, there is no need to respond further on this score.

**7.** The fact that Smith has an appeal of that judgment pending does not deprive the judgment of res judicata effect. *See Amcast Indus. Corp. v. Detrex Corp.*, 45 F.3d 155, 158 (7th Cir.1995); RESTATEMENT (SECOND) OF JUDGMENTS § 13, cmt. f (1982).

powerless to argue that the evidence introduced in his criminal case with respect to the insider trading counts was illegally derived from the voice mail tape.

■ Given this estoppel, Smith no longer can make out a plausible case that he would suffer irreparable harm without the grant of a preliminary injunction. Smith, of course, can no longer assert that an injunction is necessary to bar the use of the tape in the criminal case. In the civil action before Judge Pfaelzer, as discussed above, the SEC now need only introduce the fact of the criminal conviction to prevail. Accordingly, the SEC has represented to this court that it will not introduce the tape before Judge Pfaelzer. While such a representation standing alone will not destroy the possibility of injunctive relief, in the present case there is no basis to believe that the SEC would desire to take the unnecessary step of introducing the tape. In order to counter the SEC's suggestion of mootness, Smith must show "that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 898, 97 L.Ed. 1303 (1953); *see also Magnuson v. City of Hickory Hills,* 933 F.2d 562, 565 (7th Cir.1991); 13A C. WRIGHT, A. MILLER, & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3533.5 at 326 (2d ed.1984). There is no such cognizable danger that the SEC will use the tape, or any other evidence not covered by the collateral estoppel effect of Judge Hupp's ruling, in the civil enforcement action. Thus, the May 9 injunction would make no meaningful difference to the outcome of that action.

■ Smith's fallback position—not asserted before the district court or before the panel—is that the injunction is necessary to prevent the SEC from making some unspecified use of the tape outside of the context of judicial proceedings. Smith cannot identify any reason to believe that the SEC would wish to use the contents of the voice mail

tape in any manner other than to prosecute the civil enforcement action. Since a claim for injunctive relief cannot be supported by mere speculation that the plaintiff will suffer some future harm, *see City of Los Angeles v. Lyons,* 461 U.S. 95, 105, 103 S.Ct. 1660, 1666–67, 75 L.Ed.2d 675 (1983), and Smith can identify no interest that he currently possesses in the May 9 preliminary injunction that would be sufficient to justify the continuation of such relief, that injunction is now moot.

■ In any event, Smith could not demonstrate the likelihood of the type of irreparable harm that would be cognizable under the Wiretap Act, since he has acquiesced in allowing the tape to become part of the public record. Although the Act provides for a separate cause of action for each individual disclosure of an unlawfully intercepted communication, it does not proscribe the disclosure of information that has become part of the public record. *See Fultz v. Gilliam,* 942 F.2d 396, 403 (6th Cir.1991); *Spatafore v. United States,* 752 F.2d 415, 418 (9th Cir.1985); *Fleming v. United States,* 547 F.2d 872, 874 (5th Cir.1977). Smith cannot acquiesce in unsealing the voice mail transcript in California and simultaneously assert in Tennessee that he has a continuing interest in keeping that transcript private.[8]

The factual predicate for Judge Nixon's issuance of the May 9 injunction no longer exists, and Smith can gain no meaningful relief from the continuation of that injunction. Therefore, we are obligated to vacate the injunction as moot. *See International Union v. Dana Corp.,* 697 F.2d 718, 720–21 (6th Cir.1983).

■ The dissent argues that the possibility that a party is collaterally estopped from pursuing a cause of action does not entail that that cause of action is moot. We agree. *See* note 5, *supra.* The doctrine of mootness, like the parallel doctrine of standing, "in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." *Warth v. Seldin,* 422 U.S. 490, 500, 95 S.Ct.

---

8. We decline to consider whether the principle enunciated in *Fultz* would also foreclose any claim for relief under the Wiretap Act if a party were to publicize the more personal information

also contained in the voice mail transcript. We hold only that the injunction must be vacated because there is no plausible basis to believe that the SEC intends to do so.

2197, 2206, 45 L.Ed.2d 343 (1975). Stated differently, the court *assumes* that the plaintiff will receive the relief that he requests in *this* litigation, and then proceeds to determine whether there is a substantial likelihood that that relief will redress his asserted injury. *See Allen v. Wright,* 468 U.S. 737, 752, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984). Since, for the purposes of our inquiry into Smith's standing to seek injunctive relief, the possibility that he is collaterally estopped before Judge Nixon is an issue on the merits, we do not consider that possibility at this juncture. *See Bills v. Aseltine,* 52 F.3d 596, 604 (6th Cir.1995).

The fact that Smith is collaterally estopped in the civil enforcement action, however, is an entirely different matter. Because of that estoppel, even if the May 9 injunction were to remain in effect, the possibility that Smith would gain any meaningful benefit from that injunction is "too speculative," *ibid.,* to allow a federal court to continue such relief. As noted above, there are at most three ways in which Smith could argue that he would benefit from the injunction, but none of those arguments is availing. First, he can no longer claim that he needs the injunction to protect him in the criminal proceeding, as that proceeding is over. Second, he cannot claim that he needs the injunction to protect him in the civil enforcement action, since the SEC no longer needs to introduce the tape or evidence derived therefrom to secure a favorable ruling in that action; thus, the outcome of the civil action being the same in either instance, "the relief sought would [not], if granted, make a difference to the legal interests of the parties[.]" *McPherson v. Michigan High Sch. Athletic Ass'n,* 119 F.3d 453, 458 (6th Cir.1997). Third, although Smith claims that he needs protection from some unspecified other wrongful use of the tape by the SEC, he identifies no reason to believe that the SEC would wish to use the tape outside of the context of court proceedings.

## IV

We wish to underscore that we do not hold that the case pending before Judge Nixon is moot in its entirety. Smith remains free to pursue his motion for contempt, which has yet to be considered by Judge Nixon; our judgment should not be read to express an opinion as to the merits of that motion. Furthermore, unlike the vacated panel opinion, this opinion does not undertake to decide the merits of Smith's claim under the Wiretap Act. Thus, Smith also is free to pursue a claim for declaratory relief or damages under 18 U.S.C. § 2510, although we express no opinion as to whether the latter claim would survive the sovereign immunity defense that the SEC has advanced below. And, of course, upon a sufficient showing of a change in circumstances, Smith would be free to renew his claim for injunctive relief. We hold only that the two preliminary injunctions before us must be vacated.

In No. 95–5862, the injunction is VACATED as moot. In No. 95–6625, the injunction is VACATED. The case is REMANDED to the district court for further proceedings consistent with this opinion.

MERRITT, Circuit Judge, dissenting.

The original panel decision in this case vacated the two injunctions entered by District Judge Nixon on May 9 and November 15, 1995. The panel decision held on the merits that the SEC could use as evidence the tape obtained illegally in violation of the Wiretapping Act. I dissented reasoning that the Act expressly prohibits government agents from using the tape or any evidence derived from it. The full court voted to rehear the case *en banc.*

The main preliminary injunction was issued by the District Court on May 9. That injunction simply enjoins the SEC from using the information obtained from the illegal wiretap. Judge Boggs' opinion now holds that this injunction "has become moot" because "Smith's conviction [in California] collaterally estops him" from further claiming that he is entitled to the injunction (op. p. 361–362, ¶ 35).

Both res judicata and mootness principles go back a long way in our legal history, but legal history has never before heard of a doctrine that "collateral estoppel" or issue preclusion can simply make another case "moot." Rather, collateral estoppel, an affir-

mative defense, is a principle of finality of judgments which bars the further prosecution of a cause of action previously litigated by the parties. It prevents parties from repeatedly relitigating the same issue. Heretofore, the law has not confused or conflated it with the doctrine of mootness which serves an entirely different purpose—*i.e.*, to avoid hypothetical disputes that are no longer "live controversies." Judge Boggs' opinion cites no authority for using "collateral estoppel" to trigger mootness in another case.

In the present case, neither collateral estoppel nor mootness apply to bar the action from proceeding on the merits under the Wiretap Act. The controversy between Smith, the inside trader, and the SEC over the use of the tape by the SEC remains very much alive. The SEC continues to threaten to use it together with evidence derived from it in other proceedings. The federal District Court in California in the criminal case against Smith agreed with Judge Nixon below that the government prosecutors should not be able to use the tape and the evidence derived from it in the criminal proceeding, and the California court, therefore, suppressed its use in that criminal case. But the California court had no civil jurisdiction under the Wiretap Act to issue and did not issue an injunction against the SEC's use of the tape. Thus, the issue of the SEC's use of the tape and the evidence derived from it is still alive. Our Court should, therefore, reach the merits of the issue under the Wiretap Act that the panel decision wrongly decided. With respect to the November 15 injunction prohibiting the SEC from proceeding with a civil, insider-trading, enforcement action in California, I believe the injunction is basically sound but should be modified so that it simply enjoins the SEC from using the illegal tape and evidence derived from it in civil enforcement proceedings. At the present time the injunction is overbroad because it implies that the SEC may not go forward with any enforcement proceeding, and so it should be narrowed and modified to limit its reach to the use of the illegal wiretap tape and evidence derived from it.

Accordingly, I would reach the merits of the injunction issues presented and argued to us at our December 4, 1996, oral argument. I would affirm the District Court's injunctive orders as modified, and I would hold that the issues debated in the District Court and before our panel and before the *en banc* Court are still alive and are not moot.