JOHN IKE GRIFFITH AND EFFIE MERLE GRIFFITH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Griffith v. Commissioner
Docket No. 4407-73.
United States Tax Court
T.C. Memo 1985-215; 1985 Tax Ct. Memo LEXIS 417; 49 T.C.M. (CCH) 1399; T.C.M. (RIA) 85215; May 6, 1985. John *418 Ike Griffith, pro se. Frank Simmons, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined the following deficiencies in and additions to petitioners' income taxes: Addition to Tax
Year
Deficiency
Section 6653(b) [1]
1967
$84,312.89
$42,156.45
1968
88,728.22
44,364.11
1969
138,905.70
69,452.85
1970
70,314.81
35,157.41
After concessions, the issues for decision are: (1) Whether certain documents seized from John Ike Griffith are admissible into evidence. (2) Whether petitioners realized unreported income from divorce fees during 1967, 1968, 1969 and 1970 and, if so, how much. (3) Whether the joint income tax returns filed by petitioners for the years 1967, 1968, 1969 and 1970 were fraudulent. (4) Whether an assessment for any of the years 1967, 1968, 1969 and 1970 is barred by the statute of limitations. (5) Whether *419 there has been a second inspection of petitioner-husband's books of account for any of the years 1967 through 1970 under section 7605(b). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts together with the exhibits attached thereto are incorporated herein by reference. Petitioners, John Ike Griffith and Effie Merle Griffith, are husband and wife. During the years in issue they resided in Birmingham, Alabama, and at the time of filing their petition they resided in Dutton, Alabama. Petitioners timely filed joint income tax returns for the years 1967 through 1970 with the Internal Revenue Service Center in Chamblee, Georgia. Respondent has conceded that Effie qualifies as an innocent spouse under section 6013(e) and is not responsible for the additions to tax under section 6653(b). Hereinafter, when we refer to Griffith or petitioner, we will be referring solely to John Ike Griffith. John Ike Griffith maintained a law office in Birmingham for over thirty years, including the years in issue. He was disbarred by the Board of Commissioners of the State Bar of Alabama in 1967, [2] but he continued to practice until August 14, 1970. *420 After his disbarment his practice consisted almost entirely of "quickie" divorce cases which he handled for out-of-state clients under an arrangement he had with F. O. Whitten, Jr., Judge of the Circuit Court of the Thirtieth Judicial District of Alabama which included St. Clair and Blount Counties. [3] Under this arrangement, Judge Whitten [4] caused preprinted divorce decrees, which had already been signed by him and by Ann Love, Judge Whitten's sister and register or clerk of his Court, to be delivered to Griffith's office in groups of 10 to 40. In a typical case, an out-of-state client would initially contact Mr. Griffith by telephone or letter inquiring about a quick divorce. Mr. Griffith would advise the prospective client that all the client needed to do was come to Griffith's office in Birmingham and to bring with him a form signed by his spouse consenting to a divorce. When the client *421 arrived information pertinent to the divorce would be obtained by Griffith and dictated to his secretary. The secretary would type the information on one of the pre-signed decrees provided by Judge Whitten. The decree was then presented to the client for signature. The decree was completed when a gold impression of the seal of Blount or St. Clair County was affixed thereto by Griffith or his secretary. If a mistake was made in the preparation of a divorce decree, the secretary wrote "void" across the face of the pre-printed decree and returned the unused document to Judge Whitten. Each completed decree was delivered by Griffith to the client upon the payment of $465. At the end of every work day, Griffith divided the divorce fees by placing $191 per divorce plus $15 for court costs in an envelope. The daily envelopes were delivered once or twice a week to Judge Whitten by Griffith's wife of secretary. The fees were usually exchanged for more signed but blank decrees. This practice continued from 1967 until August 14, 1970. A list of the decrees prepared in Griffith's office was made by his secretaries. The list contained the client's name, the name of the court purportedly granting *422 the divorce, and a docket number. The secretaries also maintained a list of attorneys who referred cases to Griffith. During the latter part of 1969 or early 1970 the United States Postal Service began investigating allegations by the Alabama State Bar Association that the United States mails were being used to illegally obtain Alabama divorces for nonresidents. During the investigation, Charles Davis, a United States Postal Inspector, initiated a "mail cover" on the address of petitioner's office. A mail cover is authorized under postal regulations and is a record of all mail going to a named address for a specified period of time. The information obtained by such a cover is that which appears on the outside of the envelope or other package such as the addressee, the name and address of the sender, and the classification of the mail. The mail is not opened. With information obtained from the mail cover, postal inspectors identified and interviewed persons who sent mail to Mr. Griffith and in this manner obtained information concerning his divorce practice. With this information, Inspector Davis obtained a warrant from Mildred F. Sprague, a United States Commissioner, authorizing *423 a search of Mr. Griffith's law office for the following: Files relating to divorces purportedly obtained for non-residents of the State of Alabama in Saint Clair, Winston and Jefferson Counties, Alabama as follows: Joseph Angelo, Jr. and Rose M. Angelo; M. Sonya Becker; August F. Berger and Patricia Berger; Charles W. Bishop; S. E. Bongiro and Mary Ann Bongiro; Sandra Bruen; Marie Busardo; Antoinette Calavas; Audrey Karney; Jack Cervetto; Francis M. Connolly; Charles R. Covino; Barbara M. Cowley and Peter O. Cowley; Margaret Cramer; Jill Cullen; James A. Gehringer; Lorraine Giusto; Herb Griffith; Caroline A. Grochal; Frances G. Harvey and Leonard H. Harvey; Dorothy Keith; Christopher Kucharzzek; Kenneth McCarthy; Mrs. Marilyn R. Mitsch and Edward J. Mitsch; Joel D. Monteith and Dolores A. Monteith; Rose M. Noble; Sandra Lee O'Connor and Charles F. O'Connor; Mrs. Ruth Pfeffenle; Linda Preston; Irving Reich and Rosalie A. Reich; Buckley J. Schwerd and Joyce A. Schwerd; Sandra Suidam; Gus Wedin; Susan R. Mazza and Saverio v. Mazza; Stephen J. Koen; Alfred F. Neuhaus and Carol Ann Neuhaus; and such other records as he may have in his possession relating to divorces obtained for non-residents *424 of the State of Alabama and rubber stamps bearing names other than his own or those of his employees and any adhesive stamps or seals resembling official Court seals or mechanical device for impressing an impression resembling an official Court Seal which are instrumentalities of a continuing scheme to defraud numerous persons from various locations, in violation of Title 18, Section 1341, United States Code. On August 14, 1970 Inspector Davis, accompanied by Postal Inspector James Holland, served the search warrant on Mr. Griffith in his office. The search which followed disclosed: Letters to Mr. Griffith's secretary from Judge Whitten; voided blank divorce decrees signed by Judge Whitten and Ann Love; a form letter for clients to affirm to Griffith that they were Alabama residents; client lists for 1967, 1968, 1969 and 1970; a receipt form; and several divorce files. Prior to removing the items from the office, Mr. Davis prepared a list of the documents, a copy of which was attached to the search warrant and another copy was given to Mr. Griffith. On August 20, 1970, Griffith was indicted in the United States District Court for the Northern District of Alabama on six counts *425 of mail fraud in violation of Title 18, U.S.C. Secs. 371 and 1341. The indictment alleged that Griffith obtained 661 fraudulent divorces in 1967; 660 in 1968; 906 in 1969; and 612 in 1970. Griffith entered a plea of not guilty but at a trial by jury he was convicted on all counts in April of 1971 and the conviction was affirmed by the United States Court of Appeals for the Fifth Circuit. [5]
Judge Whitten was both preceded and succeeded by Judge L. P. Waid who served two terms as Circuit Judge of the Thirtieth Judicial District. Judge Waid began his term as Judge Whitten's successor in January of 1971 and upon inspecting his office in the courthouse at Pell City he discovered a small locked anteroom which could only be entered through the office occupied by Judge Whitten during the preceding term. The anteroom contained a locked metal cabinet which in turn contained a number of files. In the files Judge Waid found what appeared to be divorce decrees and proceedings in divorce cases. At judge *426 Waid's request custody of these files was taken by Clemons Roe, Sheriff of St. Clair County. Sheriff Roe immediately assembled a crew of approximately 16 persons, including Judge Waid and Postal Inspector Davis, who prepared a list of the divorce decrees. After the list was completed the files were turned over to Inspector Davis who ascertained that none of the 2,295 decrees on the list appeared in the records of the Thirtieth Judicial District. For the years 1967 through 1970, the list of the 2,295 decrees found in Pell City contained the same names that appeared on Griffith's client list for the same period. There were, however, 53 names on the Pell City list for which there were no corresponding entries on the client list and decrees were not found in Pell City for 495 names which appeared on Griffith's client list. The following schedule reflects the number of names on Griffith's client list, by year and county, and the number of divorces used in respondent's notice of deficiency mailed to petitioners on March 15, 1973: Divorces Used In
Respondent's Notice
Griffith's Client List
of Deficiency
Total Names Per
St. Clair
Other
Year
List
County
Counties
1967
558
532
26
661
1968
660
647
13
660
1969
908
899
9
906
1970
618
238
380
612
2,744
2,316
428
2,839
*427 Respondent concedes that the number of divorces in 1967 was 558 instead of 661 as shown in the notice. His corrected computation of the amount of divorce fees which were unreported by petitioner is as follows: 1967
1968
1969
1970
Fee Per Divorce
$ 465.00
$ 465.00
$ 465.00
$ 465.00
Payment to Whitten
-191.00
-191.00
-191.00
-191.00
Fee Per Case
$ 274.00
$ 274.00
$ 274.00
$ 274.00
Number of Divorces
X 558
X 660
X 906
X 612
Gross Income
$152,892.00
$180,840.00
$248,244.00
$167,688.00
Income Reported
26,779.99
28,020.99
34,048.58
36,211.29
Amount Underreported
$126,112.01
$152,819.01
$214,195.42
$131,476.71
For the taxable years 1964, 1965, and 1966, a joint investigation of Griffith's books of account was conducted by Revenue Agent John H. Sanford and Special Agent Lawrence Fitzsimmons. During the course of this investigation Griffith turned over the following records to the agents: (1) a ledger bearing the date 1964; (2) a journal bearing the date 1965; (3) a cash or daybook bearing the date 1966; and (4) a receipt book. The agents acknowledged in writing that they received these records on March 12, 1968, and on *428 May 26, 1969 Griffith acknowledged in writing that the records had been returned to him. OPINION (1) Suppression of Evidence
Petitioner objected to the admission into evidence of the documents taken from his office by Postal Inspector Davis pursuant to the search warrant. He contends that the search warrant was invalid, that the items seized were not specifically listed in the search warrant and that the admission of the documents violates his rights under the Fifth Amendment against self-incrimination. He also argues that the mail cover was unconstitutional and that postal officers actually opened his mail rather than recording only the information which appeared on the outside of the envelopes addressed to him. The same documents were admitted by the District Court in his trial for mail fraud and Griffith appealed his conviction in that case to the Court of Appeals which found that his constitutional arguments had "no merit whatsoever." United States v. Griffith,453 F.2d 1207, 1208 (5th Cir. 1972), cert. denied 406 U.S. 957 (1972). We agree and moreover petitioner is estopped from once again challenging the validity of the warrant. Estate of Best v. Commissioner,76 T.C. 122, 132-134 (1981); *429 Estate of Hill v. Commissioner,59 T.C. 846 (1973). See also Boyle v. Commissioner,T.C. Memo. 1975-307. Petitioner insists, however, that even if the warrant was valid, the evidence should be suppressed because all of the items seized (e.g., the client lists) were not specifically described in the warrant and were, therefore, seized illegally. The search warrant authorized postal inspectors to take files "relating to divorces purportedly obtained for non-residents of the State of Alabama in Saint Clair, Winston and Jefferson Counties * * * and such other records as he may have in his possession relating to divorces obtained for non-residents of the State of Alabama * * *." [Emphasis added.] Obviously all of the items seized including the client lists reasonably related to the mail fraud charge with respect to which the warrant was issued and, therefore, petitioner's constitutional rights were not violated and the evidence is not suppressible. See Tirado v. Commissioner,74 T.C. 14 (1980), affd. 689 F.2d 307 (2d Cir. 1982) and the cases cited therein. Finally, petitioner argues that the admission of the seized *430 records is a violation of his Fifth Amendment rights against self-incrimination. The record, however, contains no evidence or even a suggestion that he has reasonable grounds for believing that he is under any threat of further criminal prosecution. Therefore, this argument must also be rejected. Roberts v. Commissioner,62 T.C. 834, 838 (1974); Rogers v. United States,340 U.S. 367, 374 (1951). With respect to the mail cover, petitioner asserts that the mail inspectors either opened his mail or read the contents with the aid of special photographic equipment. Here again the record contains no evidence to support this contention. Postal Inspector Davis testified that postal officials merely noted the information appearing on the outside of the mail and with this information contacted and interviewed the persons corresponding with Griffith. The use of mail covers in this manner as prescribed by postal regulations does not violate a person's constitutional rights. United States v. Choate,576 F.2d 165 (9th Cir. 1978), cert. denied 439 U.S. 953 (1978). (2) Unreported Income
Petitioner admits that he received *431 $465 per divorce in the years 1967 through 1970. Respondent has conceded and allowed a deduction for the $191 per divorce which petitioner paid Judge Whitten. Furthermore, petitioner does not contest respondent's determination of the number of divorces petitioner handled each year in issue. He contends, however, that he paid referral fees to out-of-state attorneys which were not allowed by respondent and that when these are taken into consideration his income from the divorces was accurately reported. Petitioner presented no evidence other than his own testimony in support of payment of referral fees and his testimony was vague and contradictory as to the number and the amount of such fees. Consequently, while we are included to believe that some referral fees were paid we are satisfied from the record as a whole that such fees were few in number and even those few may have been charged to the client in addition to the base fee of $465. We have found, however, that in addition to Judge Whitten's fee of $191 petitioner also paid court costs of $15 per divorce. With this exception the respondent's computation of the deficiencies involved in this case is sustained. (3) *432 Fraud
The burden of proving fraud is on respondent. Section 7454(a); Rule 142(b); Stone v. Commissioner,56 T.C. 213, 220 (1971). The burden is met if it is shown by clear and convincing evidence that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983); Acker v. Commissioner,26 T.C. 107, 112 (1956). The existence of fraud is a question of fact to be determined from a consideration of the entire record. Rowlee v. Commissioner,supra at 1123; Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed. Beaver v. Commissioner,55 T.C. 85, 92 (1970). Fraud may, however, be proved by circumstantial evidence because direct proof of intent is rarely available. Stephenson v. Commissioner,79 T.C. 995, 1005-1006 (1982), *433 affd. 748 F.2d 331 (6th Cir. 1984); Gajewski v. Commissioner,supra at 200. The taxpayer's entire course of conduct may be used to establish the requisite intent. Spies v. United States,317 U.S. 492 (1943); Gajewski v. Commissioner,supra at 200; Stone v. Commissioner,supra at 223-224. From a review of the entire record, we are satisfied that the evidence in this case clearly and convincingly leads to the conclusion that petitioner received taxable income in the form of legal fees during each of the years 1967, 1968, 1969 and 1970 which he failed to report. We are aware, of course, that the mere receipt of unreported income, standing alone, is not in and of itself proof of fraud especially where the finding of the receipt of the income is based at least in part on the taxpayer's failure to overcome the presumption that respondent's determination is correct. See Drieborg v. Commissioner,225 F.2d 216 (6th Cir. 1955); Shaw v. Commissioner,27 T.C. 561 (1956), affd. 252 F.2d 681 (6th Cir. 1958). Furthermore, we are also aware that even if *434 omissions from income are affirmatively shown by respondent, the fraud addition should not be imposed where the record as a whole supports the conclusion that the omissions were the result of negligence, inadvertence, or honest mistake. This, however, is not the case before us. Here respondent has affirmatively shown a consistent pattern of omitted income over all four years. This consistent pattern of substantial understatement of income supports a conclusion that the omissions were made with intent to evade tax. Holland v. United States,348 U.S. 121 (1954); Archer v. Commissioner,227 F.2d 270 (5th Cir. 1955); Bryan v. Commissioner,209 F.2d 822 (5th Cir. 1954), cert. denied 348 U.S. 912 (1955). Further support for such a conclusion appears where, as here, the recipient of the income is well acquainted with his obligations under the law. See Halle v. Commissioner,7 T.C. 245 (1946), affd. 175 F.2d 500 (2d Cir. 1949). Moreover, the omission of income coupled with other criminal conduct tends to indicate an intention to operate outside the law and the need to mislead or conceal. Evidence *435 of such other criminal conduct is indicative of fraudulent intent. See Rogers v. Commissioner,111 F.2d 987 (6th Cir. 1940). [6] In this case we cannot overlook the fact that during the same period the income omissions were occurring petitioner was engaged in activities which led to his disbarment, as well as his conviction for unlawfully holding himself out to be a licensed attorney and for mail fraud. Thus, we are led to the inexorable conclusion that petitioner knowingly and intentionally omitted taxable income in substantial amounts from each of the returns for 1967, 1968, 1969 and 1970 and is liable for the addition to tax provided by section 6653(b) for each year. (4) Period of Limitation
In view of our finding that the returns for the years in issue are fraudulent the assessments may be made at any time. Section 6501(c)(1). (5) Second Inspection
Section 7605(b) provides that the Commissioner is restricted to one inspection of a taxpayer's books of account for each taxable year unless the taxpayer requests otherwise or unless the Secretary notifies the *436 taxpayer in writing that an additional inspection is necessary. In 1968 respondent undertook an examination of petitioner's books of account for the years 1964, 1965 and 1966. Petitioner signed a receipt acknowledging that respondent received and returned records pertaining to these years. Petitioner speculates that respondent may have also examined his records for 1967 during that examination as well as during the examination which resulted in this case. The record contains no evidence to support this speculation. In fact, the evidence presented leads us to conclude that respondent only inspected his records for 1964, 1965, and 1966 during the 1968 examination. In closing, we note that on brief petitioner resorted to various "protester" arguments. These arguments are frivolous, have been rejected repeatedly, and do not merit further discussion. See Abrams v. Commissioner,82 T.C. 403 (1984); Swanson v. Commissioner,65 T.C. 1180 (1976). Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise provided.↩
2. See In re Griffith,219 So.2d 357, 283 Ala. 527↩ (1969). 3. St. Clair County has two courthouses, one at Pell City and the other at Ashville. Blount County has only one which is located at Oneonta.↩
4. See Whitten v. Commissioner,T.C. Memo. 1980-245↩.
5. In the meantime Griffith had been convicted in the Circuit Court of Jefferson County, Alabama, of unlawfully holding himself out as a licensed attorney.↩
6. See also Whitten v. Commissioner,T.C. Memo. 1980-245↩.